[No. 39126.     En Banc.     April 10, 1969.]

RICHARD W. SAVAGE *et al.*, *Respondents*, v. THE STATE OF
WASHINGTON *et al.*, *Appellants.**

*The Attorney General, Robert F. Hauth* and *Arthur W.
Verharen, Assistants,* for appellants.

*Brodie, Fristoe & Taylor,* by *Doane Brodie* and *Hamblen,
Gilbert & Brooke,* for respondents.

*Reported in 453 P.2d 613.

NEILL, J.—Two taxpayers, through declaratory judgment proceedings against the State of Washington and its Director of the Department of General Administration, attack the validity of a state purchase contract. The contract contains an option provision whereby the state may extend the duration of the purchase agreement for successive 1-year periods to a maximum of 3 additional years beyond the basic 1-year term.[1]

This is a companion case to *Miller v. State*, 73 Wn.2d 790, 440 P.2d 840 (1968). The cases were consolidated on appeal for purposes of argument. We affirmed the decree of the trial court in *Miller*, thereby determining that under current conditions the purchase of electric light bulbs by the state is to be by competitive bid pursuant to RCW 43.19.1906. The instant case is an outgrowth of those proceedings.

Upon entry of the decree by the trial court in *Miller*, enjoining the state from negotiating a renewal of the 1-year electric lamp purchase contract of February 1, 1958, the state did call for bids and awarded a new contract to the lowest bidder, Platt Electric Supply, Inc., for the furnishing to the state of electric lamps and starters. The sole contention of plaintiffs is that the option to extend the contract term is a violation of the competitive bid statute. The trial court agreed and entered summary judgment declaring the option provision void and unlawful and enjoined defendants from exercising the option. The defendants appeal.

The state has administratively determined that it is in its best interests to contract for the purchase of lamps and starters under a 1-year purchase agreement, together with

---

[1]Contract Dates: "This contract shall be for a period commencing on the 1st day of January, 1966, and terminated on the 31st day of December, 1966."

Extensions: "Bidder and Division of Purchasing covenant and agree that this contract may, at the sole option of the State of Washington, be extended under the same terms and conditions of this contract for a period not to exceed one additional year, and said option to extend this contract for a one year period shall be in effect for each year thereafter for a total period not to exceed three additional years."

the right in the state to extend the agreement annually, at the sole option of the state, for up to an additional 3 years. The salutary purpose of a governmental unit using a competitive bid procedure for the acquisition of its materials and supplies is not here in question since the state has, in fact, awarded the subject contract after full compliance with statutory dictates. Rather, the issue before us is limited to whether the state was required to specify the absolute time period of the purchase contract or whether it could, as done herein, advertise for and award a contract for a 1, 2, 3, or 4-year period, the length of which would be at the option of the state.

■ This second contract does not create the same issue which prevailed under the 1958 contract. That contract, effective February 1, 1958, ran for 1 year and the state thereafter *negotiated* a renewal thereof, being in essence a new contract without bidding thereon. In the instant case, the call for bids was for a contract of a 1, 2, 3, or 4-year duration—at the sole option of the state—and is not a matter of negotiation at the end of each annual term.

This purchase agreement giving the state an option to extend the duration of the contract, under the same terms and condition, for limited, specified periods does not create successive new contracts but, rather, merely extends the duration of a single existing contract. *See, Helena Light & Ry. v. Northern Pac. Ry.,* 57 Mont. 93, 186 Pac. 702 (1920); *cf., State ex rel. Preston v. Ferguson,* 170 Ohio St. 450, 166 N.E.2d 365 (1960). As stated in 17A C.J.S. *Contracts* § 449 (1963):

> Generally an option to renew a contract is the right to require the execution of a new contract while an option to extend the term merely operates to extend the term of the original agreement. Whether a party has an option to renew depends on the provisions of the contract and their construction.

The contract before us clearly provides for an extension of the duration of the purchase agreement rather than a renewal and execution of a new contract.

There is no statutory requirement limiting the time or duration of a purchase contract. If the legislature had intended that all purchase contracts be limited to a specific duration without option it could well have so stated.

■ As succinctly stated in 10 McQuillin, Municipal Corporations (3d ed. 1966) § 29.29, p. 321, competitive bid statutes are "for the purpose of inviting competition, to guard against favoritism, improvidence, extravagance, fraud and corruption, and to secure the best work or supplies at the lowest price practicable, and they are enacted for the benefit of . . . taxpayers, and not for the benefit or enrichment of bidders . . . ." *Edwards v. Renton,* 67 Wn.2d 598, 602, 409 P.2d 153 (1965). Unless specifically prohibited by statute and subject to judicial review as to reasonableness (*Deaconess Hosp. v. State Highway Comm'n,* 66 Wn.2d 378, 405, 403 P.2d 54 (1965), administrative agencies are free to exercise discretion and judgment. *See Beverly Sewerage Authority v. Delanco Sewerage Authority,* 65 N.J. Super. 86, 167 A.2d 46 (1961). The Department of General Administration herein has determined that the best interests of the state and the taxpayers lie in protecting against a price increase by obtaining a limited, specific option to extend the 1-year contract. All bidders had an equal opportunity to compete. This court has recognized this right as to selection of the duration of a contract in *Washington Fruit & Produce Co. v. Yakima,* 3 Wn.2d 152, 163, 100 P.2d 8; 103 P.2d 1106 128 A.L.R. 159 (1940). *Also see Townsend Gas & Elec. Co. v. Port Townsend,* 19 Wash. 407, 53 Pac. 551 (1898).

■ There is no contention made herein that a maximum possibility of 4 years is an unreasonable length of time for the state to contract for its lamp and starter needs. Rather, it is contended that a firm 1-year contract with an option to extend constitutes a negotiation and is not competitive. We do not agree with this contention, as the duration of a contract is as much a term of the agreement as is price, description of the subject matter, and the myriad of other provisions which may properly be included in a purchase contract. These essential terms must be left to

the determination of the administrative agency invested with this governmental responsibility.

Statutory bidding requirements do not restrict the administrator's power to make decisions with respect to the particular terms, conditions and specifications to be included in a purchase contract except insofar as the statute stipulates restrictions as a matter of legislative policy. Rather, bidding statutes require that once the state, acting through its administrator, has made those decisions, all qualified suppliers must be given the opportunity to make proposals on the particular terms resulting from those administrative decisions and that the qualified, responsible bidder with the lowest bid (sometimes "lowest and best" or other similar term) be awarded the contract.

All bidders had an equal opportunity to respond to the department's invitation to bid on the terms specified and it can hardly be termed "a negotiation" to comply with one of the basic elements of the specifications. However, the reasonableness of the duration of a purchase contract is subject to judicial review in the same manner and under the same principles as are other discretionary decisions of administrative agencies. Our holding herein is not a carte blanche approval of unlimited extension provisions, but as pointed out above, the action of the department is not challenged as constituting an abuse of administrative discretion.

■ Plaintiffs suggest in their brief that this contract violates RCW 43.88.130 "No agency shall expend or contract to expend any money or incur any liability in excess of the amounts appropriated for that purpose: . . . Any contract made in violation of this section shall be null and void." However, there is no suggestion that the purchase of lamps or any other goods or supplies falls within the bar of this statute ipso facto. *See Marble v. Town of Clinton,* 298 Mass. 87, 9 N.E.2d 522, 111 A.L.R. 1101 (1937), and *McBean v. Fresno,* 112 Cal. 159, 44 Pac. 358 (1896). The very option of which plaintiffs complain permits the state to view its available funds as well as its needs and

price levels in making the administrative business decision each year as to whether or not it will extend the contract.

Accordingly, the judgment is reversed.

HILL, FINLEY, HAMILTON, and McGOVERN, JJ., concur.

HALE, J. (dissenting)—The statute categorically declares that *all purchases and sales shall be based on competitive bids,* and directs that a formal bid procedure shall be used. RCW 43.19.1906. It specifies only four exceptions to this mandate: (1) If purchasing by competitive bids would be impracticable; (2) emergencies; (3) purchases not exceeding $500 when enough price quotations are secured to assure a competitive price; and (4) purchases limited to a single source of supply or involving special services or market conditions.

In *Miller v. State,* 73 Wn.2d 790, 440 P.2d 840 (1968), a companion case to this one, we held that the purchase of light bulbs by means of sealed competitive bidding is practicable, not exceptional, and, therefore, mandatory. Similarly, I can find no circumstances or conditions in the present use which would bring the contract within any one or more of the foregoing statutory exceptions, or remove it from the competitive bidding requirements.

The majority, however, assumes that the contract in issue, because initially adopted on competitive bids, retains its original validity for each succeeding term when renewed without competitive bidding because the renewals or extensions are at the sole option of the state. But, giving the state the sole of option of renewal does not, I think, make the new contracts coming into existence by that renewal genuinely competitive nor constitute in my view the legal equivalent of contracting through sealed bids.

Among the many benefits sought to be fostered by means of sealed competitive bidding in the purchase of state supplies and equipment is the prospect that all such purchases—other than those exempt by statute—shall be subject to public notice and scrutiny and open to all who would bid thereon. Open contracts openly arrived at seems to be

the goal of the legislature. The very acts of publicly calling for and the submitting of sealed bids promise to a substantial degree the achievement of this public benefit. Sealed competitive bidding thus carried out under formal procedures as directed by statute minimizes the opportunity of the state's purchasing agents to practice favoritism; it hedges about the state's agents a salutary restraint which, while perhaps curtailing employment of their negotiating skills, strikes a happy balance by giving the public some assurance that the state is getting the best bargain possible and one consistent with providing an equal opportunity for those who would do business with it.

I do not suggest that it has been shown here that the state's representatives and agents acted other than in good faith, but that is not the basis upon which we measure the validity of this contract. The true test is not what has been done under a law, but rather what can be done under it.

Although the initial contract for a 1-year term, including options in the state to renew annually for 3 additional years, came into existence through sealed competitive bids, I do not believe that the contracts created by exercising this power of renewal can be said to be based on sealed competitive bidding. At the expiration of the 1-year term, there need be no call for bids; no party other than the state and the other contracting party in the business of manufacturing or selling light bulbs, will likely have knowledge of the state's intention to extend the contract.

How could a supplier or manufacturer, were he in a position to tender a lower and better bid after the first year of the contract, do so under the procedure countenanced by the majority opinion? A new contract under the majority ruling can come into existence each year for a possible total of four times the original term merely through notice of renewal to the contractor. Each such successive contract will be binding upon the state for the whole year once the option has been exercised, without public notice or competitive bidding, for both the public and the industry at large have no right to and probably

will receive no public notice of the renewals. Although, as the majority says, "All bidders had an equal opportunity to compete," bidders will not have an equal opportunity to do so on each newly created contract coming into being by the exercise of the state's option to renew.

Prices, conditions and terms for the sale and delivery of light bulbs are subject to change with changing economic conditions. The present contract will, if renewed or extended annually, deprive the public and the industry of the protections afforded by competitive bidding during a period of 3 years. Conversely, if formal bid procedure as described in the statute is employed, calling for contracts for a fixed term, a genuinely equal opportunity is afforded all bidders and the public is protected, too. Each bidder is thereby enabled to do his best to anticipate the future and carry out his estimates thereof by making firm bids for the sale and delivery of light bulbs to the state for a precise period. I think that is exactly what the legislature intended.

Under the majority opinion, the state's officers who write the specifications, make public call for bids, and award the contract publicly to the lowest and best bidder, will have the exclusive power of deciding the quality and standards of performance with which the contracting party has carried out the contract. There are no procedural avenues left open to competitors in the industry or to the public during the 3 years of possible renewals by which the performance of the supplier may be publicly assessed. If, as the majority implies, the state's purchasing officers possess the discretion to extend this contract at all, they have the legal power to do so even though the supplier's performance has been substandard. The majority opinion, therefore, in my view, will tend to allow a form of favoritism, which the statute—among other things—was designed to prevent.

I would borrow from the majority the idea that the legislature could have expressed itself differently. If the legislature had intended to give the state's officers power to renew or extend contracts on behalf of the state without further competition, it could readily have said so by adding another exception to the command that all purchases shall

be on the basis of sealed competitive bids. Having made no such exception, I think the contract violates the statute which requires competitive bidding.

I would affirm the trial court.

HUNTER, C. J., WEAVER and ROSELLINI, JJ., concur with HALE, J.

ROSELLINI, J. (concurring in the dissent)—I have concurred with Judge Hale's dissent. To understand this case it is necessary to review its companion case, *Miller v. State,* 73 Wn.2d 790, 440 P.2d 840 (1968).

In 1957, through its Department of General Administration, the state called for competitive bids to supply it with all of the light bulbs required during a 12-month period. About 12 firms put in bids. Platt Electric Supply Company, Inc., in Seattle, with main offices in Portland, Oregon, won the contract for the lowest bid, and the state accepted the bid and entered into a contract. This contract, effective January 1, 1958, had a 1-year term. Thereafter, instead of putting light bulb purchasing up for competitive bidding, the state has regularly renewed this 1958 contract with Platt Electric Supply Company, Inc., by negotiation.

The officials in the Department of General Administration maintain they have consistently obtained lower prices and better services for the state by negotiation than could have been obtained through competitive bidding.

The trial court found that the discounts contained in said lamp contract are substantially less than discounts presently available from a number of suppliers in the state of Washington, and that the Platt Electric Supply Company, Inc., gives higher discount rates in a number of instances to users under somewhat similar contracts, including the city of Seattle, the city of Tacoma, the county of Multnomah School District, the state of Oregon and the directors of King County; and that the state of Washington is not receiving the advantage of the best available prices, including discounts, in the purchases of lamps under the contract. The trial court further found that, under a limited audit

made by the Auditor of the state of Washington, it was determined that the then vendor, Platt Electric Supply Company, Inc., who is now furnishing the state of Washington with light bulbs, has made errors in its billings under the vouchers audited by the State Auditor, and that the overcharge made to the state as a result of these errors has amounted to the sum of approximately $3600.

In *Miller v. State, supra,* we held that the renewal of the contract by negotiation instead of competitive bidding was void and in violation of the state's bidding statute.

In true bureaucratic tradition, the Department of General Administration, to impose its will contrary to this ruling, conceived a scheme wherein it would call for bids for a contract to commence January 4, 1966, for the purchase of light bulbs, and that thereafter the state would at its option at the termination of each year's contract, extend it for a period of 1, 2, or 3 additional years. This the state has proceeded to do.

The trial court found that the method pursued by the state in purchasing light bulbs by negotiation resulted in the state being charged more than other purchasers. If the suit had not been brought to force the state to abide by the bidding statute, it would still continue to operate in the same manner. The new method devised by the state is contrary to the statute and I believe the new method does result in higher prices to the state.

It is common knowledge that since World War II prices have been rising in this country. According to the August 1967 issue of the Monthly Labor Review's Consumer Price Index, the cost to consumers of all items had risen 9.9 per cent from 1957-59 to 1965, and by the end of 1966 had risen another 3.2 per cent. According to the September 1968 issue of the Review, the cost had risen an additional 8.4 per cent by July 1968. The cost of nondurable items, among which light bulbs can be classified, rose 7.9 per cent from 1957-59 to 1965, an additional 3.9 per cent the following year, and a further 6.9 per cent by July 1968.

How can the state, in 1969, buy light bulbs at the price quoted for the year 1966? This defies all laws of economics.

Perhaps the old saying, "I lose on each sale but the volume gives me a profit," has become a truism when applied to the sale and purchase of light bulbs.

No one has been able to explain the economics of this transaction. Thus I can only speculate how bidders can bind themselves to sell light bulbs at the initial 1966 price for an additional 3 years. Under these circumstances, knowing that they might be bound on a 4-year contract and foreseeing that they are in a period of rising prices and costs, the bidder would naturally attempt to average out the anticipated percentage of increase for an item on a 4-year basis. Thus the bid for the first year contract would necessarily be greater than it would have been if the bid were for a 1-year period. As I read the statute, this method of bidding is contrary to its intent and does result in an initially higher sales price for light bulbs.

Although the state vehemently maintains that it is getting the best price available under its contract, this is the same contention that the state made before the trial court in the *Miller* case concerning the state's 1957 contract. The trial court found that this contention was not correct. The system, in any event, is an evasion of the statutory requirement.

I would affirm.