245 So.2d 100 (1971)
HILLSBOROUGH COUNTY AVIATION AUTHORITY, Appellant,
v.
TALLER & COOPER, INC., and Thomas A. Smith, Appellees.
No. 70-892.
District Court of Appeal of Florida, Second District.
February 19, 1971.
Rehearing Denied March 24, 1971.
*101 Allen, Dell, Frank & Trinkle, Tampa, and Holland & Knight, Bartow, for appellant.
Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellees.
J. Rex Farrior, Jr., of Shackleford, Farrior, Stallings & Evans, Professional Assn., Tampa, for amicus curiae, General Automated Systems.
HOBSON, Judge.
Appellant, hereinafter called "Authority," appeals the final judgment entered in favor of the appellees, Taller & Cooper, Inc., hereinafter called "Taller," and Thomas A. Smith, hereinafter called "Smith."
Taller and Smith filed an amended complaint against the Authority which alleged facts not in dispute by the parties. Indeed, the final judgment was entered prior to the filing of an answer by the Authority.
The facts involved in the litigation and necessary for the disposal of this appeal are as follows:
Prior to August 11, 1970, the Authority gave notice that it would receive on that date sealed bids for the construction and maintenance of the revenue control system at the new Tampa airport facility. The specifications prepared by the Authority required the bidders to submit a bid for the furnishing of the system, a bid for spare parts, a bid for the first year's maintenance and bids for maintenance for the second, third and fourth years, the last three being optional on the part of the Authority. The bidders were instructed to bid on each item.
On August 11, 1970, the Authority received and opened three bids which were submitted by General Automated Systems Company, L.F.E. Corporation and Taller. The tabulation of the bids is set forth below:

 TOTAL AMOUNT
 BASE BID,
 SPARE PARTS
 AND FIRST
 TOTAL AMOUNT FIRST YEAR YEAR
 BASE BID SPARE PARTS MAINTENANCE MAINTENANCE
General Automated $317,317.00 $ 3,496.00 $16,800.00 $337,613.00
 Systems
L.F.E. Corp. $311,477.00 $35,545.00 $29,938.00 $376,960.00
Taller & Cooper, Inc. $291,840.00 $16,118.00 $22,666.00 $330,624.00
 SECOND YEAR THIRD YEAR FOURTH YEAR TOTAL AMOUNT
 MAINTENANCE MAINTENANCE MAINTENANCE ALL ITEMS 
General Automated
 Systems $ 16,800.00 $16,800.00 $16,800.00 $388,013.00
L.F.E. Corp. $ 16,035.00 $16,035.00 $16,035.00 $425,065.00
Taller & Cooper, Inc. $ 24,026.00 $25,468.00 $26,997.00 $407,115.00

After a thorough consideration of the bids in public meeting, the Authority unanimously passed a resolution on October 9, 1970, which awarded the bid to General Automated Systems Company and elected the options for maintenance by that company for the second, third and fourth years. Pursuant to this resolution, on October 14, 1970, the Authority entered into a contract for the work with General Automated Systems Company.
At a hearing on Taller's application for temporary injunction, the parties agreed *102 that if the court found the bid was in violation of law, the court could award a permanent injunction against the Authority, while if the court found the bid procedure to be legal, a final judgment would be issued which dismissed the cause with prejudice.
This court allowed General Automated Systems to appear as amicus curiae and will be referred to herein as G.A.S.
The final judgment held:
"That the bid procedures used by the Defendant, Hillsborough County Aviation Authority, as the basis for the award of a bid and contract for the purchase of the revenue control equipment hereinbefore described, were contrary to the spirit, intent and provisions of Section 8 of Chapter 59-1356, Laws of Florida, Special Acts of 1959[1] governing the purchase of goods and services by said Defendant, and are thereby held to be illegal and void."
The final judgment then proceeded to permanently enjoin the Authority from proceeding with the performance of the contract with G.A.S. and from expending any public funds pursuant to that contract.
The parties are in dispute as to the precise interpretation of the holding expressed by the final judgment. From a reading of the entire final judgment, it is apparent that it holds that the acceptance by a public authority of bids, and the awarding of a contract thereon when such bids include options for maintenance in subsequent years, is illegal and void.
In Florida there is a presumption that public officials properly perform their duties in accordance with the law and it is incumbent upon those challenging such performance to overcome the presumption; Hunter v. Carmichael, Fla.App. 1961, 133 So.2d 584. It is further the settled rule in this country that equity will not interfere with an administrative agency in the *103 exercise of legislative power vested in it in the absence of fraud or gross abuse of discretion. Johnson v. McNeill, Fla. 1942, 10 So.2d 143.
In the instant case the Authority, after receiving the three bids, which each bidder had the equal opportunity to submit based on the exact same specifications, exercised its discretion and awarded the contract to the lowest overall bidder. It is well settled that the courts may not interfere with this judgment of the Authority as long as the Authority acted in good faith. Our Supreme Court in Culpepper v. Moore, Fla. 1949, 40 So.2d 366, set out the law as follows:
"So long as such a public agency acts in good faith, even though they may reach a conclusion on facts upon which reasonable men may differ, the courts will not generally interfere with their judgment, even though the decision reached may appear to some persons to be erroneous."
In the instant case it was specifically agreed upon by the parties and found by the lower court that there was absolutely no suggestion of bad faith on the part of the Authority.
Therefore, under the law the Authority in awarding the contract to G.A.S. acted legally and the contract must be upheld unless the inclusion of optional items in the competitive bids renders them illegal and void.
The parties have cited only one reported opinion wherein the precise question involved herein was decided and our independent research has failed to uncover any other such decision. In this case, Savage v. State, Wash., 453 P.2d 613, the Supreme Court of Washington in considering the validity of a state purchase contract which contained an option provision whereby the state had the option to extend the duration of the purchase agreement for successive one-year periods to a maximum of three additional years beyond the basic one-year term stated in a well-reasoned opinion the following:
"There is no contention made herein that a maximum possibility of 4 years is an unreasonable length of time for the state to contract for its lamp and starter needs. Rather, it is contended that a firm 1-year contract with an option to extend constitutes a negotiation and is not competitive. We do not agree with this contention, as the duration of a contract is as much a term of the agreement as is price, description of the subject matter, and the myriad of other provisions which may properly be included in a purchase contract. These essential terms must be left to the determination of the administrative agency invested with this governmental responsibility.
"Statutory bidding requirements do not restrict the administrator's power to make decisions with respect to the particular terms, conditions and specifications to be included in a purchase contract except insofar as the statute stipulates restrictions as a matter of legislative policy. Rather, bidding statutes require that once the state, acting through its administrator, has made those decisions, all qualified suppliers must be given the opportunity to make proposals on the particular terms resulting from those administrative decisions and that the qualified, responsible bidder with the lowest bid (sometimes `lowest and best' or other similar term) be awarded the contract.
"All bidders had an equal opportunity to respond to the department's invitation to bid on the terms specified and it can hardly be termed `a negotiation' to comply with one of the basic elements of the specifications. However, the reasonableness of the duration of a purchase contract is subject to judicial review in the same manner and under the same principles as are other discretionary decisions of administrative agencies. Our holding herein is not a carte blanche approval *104 of unlimited extension provisions, but as pointed out above, the action of the department is not challenged as constituting an abuse of administrative discretion."
The facts in the instant case are even stronger than in Savage because in Savage the option was to extend the entire contract whereas the option herein merely provided for the extension of maintenance to the already installed parking revenue control system. In both Savage and the instant case all bidders had the equal opportunity to bid on the exact same terms as specified by the Authority and no bidder had any advantage over the other.
We concur with the majority opinion in Savage and hold that the mere inclusion of optional items in competitive bids do not render such bids illegal and void.
For the foregoing reasons the final judgment is reversed.
PIERCE, C.J., and LILES, J., concur.
NOTES
[1] "Award of contracts  A. All construction, reconstruction, repairs or work of any nature made by the Authority, where the entire costs, value or amount of such construction, reconstruction, repairs or work, including the labor and materials, shall exceed two thousand ($2,000.00) dollars except construction, reconstruction, repairs or work done by employees of the Authority, or by labor supplied under agreement with federal government or state government, with supplies and materials purchased as hereinafter provided, shall be done only under contract or contracts to be entered into by the Authority with the lowest responsible bidder upon proper terms, after due public notice has been given asking for competitive bids as hereinafter provided. No contract shall be entered into for construction or improvement, or repair of airports and other aviation facilities and facilities related thereto, or any part thereof, unless the contractor shall have given an undertaking with a sufficient surety or sureties, approved by the Authority, and in an amount fixed by the Authority, for the faithful performance of the contract. All such contracts shall provide among other things that the person or corporation entering into such contract with the Authority will pay for all materials furnished and services rendered for the performance of the contract, and that any person or corporation furnishing such materials or rendering such services may maintain an action to recover for the same against the obligor in the undertaking, as though such person or corporation was named therein, provided the action is brought within one (1) year after the time the cause of action accrued. Nothing in this section shall be construed to limit the power of the Authority to construct, repair or improve airports and other aviation facilities or facilities related thereto, or any part thereof, or any addition, betterment, or extension thereto, directly by the officers, agents and employees of the Authority, or otherwise than by contract.

B. All supplies and materials costing one thousand ($1,000.00) dollars or more, shall be purchased only after due advertisement as provided hereinafter. The Authority shall accept the lowest bid or bids, kind, quality and material being equal, but the Authority shall have the right to reject any or all bids or select a single item from any bid. The provision as to bidding shall not apply to the purchase of patented and manufactured products offered for sale in a non-competitive market or solely by a manufacturer's authorized dealer."