Alan N. Charnes Executive Director Department of Revenue 1375 Sherman Street Denver, Colorado 80261
Dear Mr. Charnes:
This opinion letter is in response to your request for interpretations of various sections contained in Senate bill 119.
QUESTIONS PRESENTED AND CONCLUSIONS
1. May the lottery contract with vendors for a six month period and retain an option to renew the contract for an additional six month period so long as the lottery retains the sole and unconditional discretion to renew.
 My conclusion is "yes." The state may execute the contract for a six month period of time with an option to renew for an additional six month period of time upon satisfactory performance by the vendor.
2. Must the lottery conduct an independent investigation of an applicant prior to the issuance of a license to sell lottery tickets? If so, may the lottery issue temporary licenses or permits that will allow a sales agent to sell the lottery tickets only until the investigation is complete and a formal license is either approved or denied?
 My conclusion is "no." An investigation independent of the applications is not required. The lottery may issue a license based upon the information contained in a sworn application.
3. Does the word "equipment" used in C.R.S. 1973, 24-35-205(7) (Supp. 1982) pertain only to the equipment to be used directly in lottery games?
 My conclusion is "yes." The word equipment was meant to apply only to equipment to be used directly in lottery games.
ANALYSIS
1. Section 24-35-204(3)(i) (Supp. 1982) permits the director of the lottery:
 With the concurrence of the commission or pursuant to commission requirements and procedures, to enter into contracts for no longer than six months per contract for materials, equipment, and supplies to be used in the operation of the lottery, for the design and installation of games or lotteries, and for promotion of the lottery. . . .
This provision, therefore, limits each contract to a maximum of six months duration.
It is important to note the distinction between a contract that is renewed and a contract that is extended. A renewal of a contract is, in effect, the execution of a new contract. An extension of a contract is only a continuation of the existing contract . Savage v. State, 75 Wn.2d 618, 453 P.2d 613
(1969). An extension of a contract is impermissible under the lottery statute.
The statute, however, does not address the question of whether or not a contract may be renewed. Therefore, reference must be made to general tenets of statutory construction to determine whether a renewal is permissible under the statute. When construing a statute, the legislative intent is to be ascertained and given effect. A statute should be given a construction which would render it effective in accomplishing the purpose for which it was intended. A statute should not be construed in a manner which would defeat it. Cross v. Colorado State Board of DentalExaminers, 37 Colo. App. 504, 552 P.2d 38 (1975);Eugene Cervi Co. v. Russell, 31 Colo. App. 525,506 P.2d 748, aff'd. 184 Colo. 28, 519 P.2d 1189 (1972). Further, the statute should be read to give effect to each provision contained in the statute.
In reviewing the question of whether or not a renewal is permissible, other sections of the statute must be noted. Under24-35-204(3)(o), the director is required to determine such other matters as are necessary or desirable for the efficient or economical operation and administration of the lottery. Under subparagraph (b), the director is to perform any other lawful acts which he and the commissioners may consider necessary or desirable to carry out the purposes and provisions of Senate bill 119. The implication contained in subparagraphs o and p, is that the legislature intended that the lottery division would operate in the most efficacious manner.
According to the analysis presented in your request for opinion:
 (the) inherent nature of the lottery is such that a six month maximum contract will become an administrative nightmare. Lottery games require an extensive amount of preplanning and set up costs, particularly in the areas of advertising and ticket purchasing. A good deal of the costs associated with the start up of a game are one-time initial costs. New contracts for these services every six months will become very costly in the operation of the lottery.
Thus, if one were to read the six month limitation language to preclude renewal, the costs of operating the lottery would increase dramatically. Such an increase would prevent the director from operating and administering the lottery in the economical and efficient fashion required under subparagraph o. Given the fact that bidding for new contracts every six months would be expensive and time consuming, a reading of the statute which limits the contract to one six month period without renewal would offend the requirement that the director operate and administer the lottery in an efficient and economical fashion. Under the statutory tenets that a statute must be read so as not to defeat the purpose of the statute, I conclude that the division has the right to renew contracts if, in fact, the renewal of the contract will substantially lower the costs of the operation of the lottery as indicated in your request for opinion.
It is important that the lottery must retain absolute discretion to renew a contract and that no provision in any contract signed by the lottery modify that discretion. The statute intends that no restraints be placed upon the right of the lottery to renew or to not renew a contract.
2. Your second question assumes that an investigation is necessary prior to the issuance of a license. No provision in the statute requires that an independent investigation be performed for each applicant prior to the issuance of a license. The statute provides only that the costs of the investigation must be paid by the applicant if an investigation is performed.
The issuance of licenses is covered in C.R.S. 1973, 24-35-206
(Supp. 1982) and the Administrative Procedure Act, C.R.S. 1973,24-4-104 and 24-4-105. These provisions require the commissioners to adopt rules and regulations listing the requirements that an applicant must meet in order to obtain a license. If the commission obtains the necessary information through the applicant's sworn statement on his application form to determine whether he meets the criteria or not, no investigation is required by statute. If the commission can make a determination from the application that the applicant meets the criteria, then a license may be issued.
In any case, the Lottery Commission does not have the authority to issue a temporary initial license pending the outcome of an investigation. Limited licenses may be granted "only if reasonably necessary to effectuate the purposes, scope, or stated terms of the statute pursuant to which the license is required or issued." C.R.S. 1973, 24-4-104(2) (Supp. 1981). 24-4-104(2) has two goals. First, it is designed to prevent a licensee from unfair or pernicious restrictions on his license. Second, it also insures that a license is not granted to an applicant unless it is determined that he is fully qualified.
The purpose of the lottery statute is to insure an honest and efficient lottery. See C.R.S. 1973, 24-35-204(3)(m), (o) (Supp. 1982). The purposes of the lottery would be violated if the commission granted a temporary license to an applicant whose qualifications to hold that license are either unknown or questionable. In order to insure an honest and efficient lottery, the investigation should be completed before a determination is made about granting any license whether limited or unlimited if there are any doubts about the applicant's qualifications.
3. C.R.S. 1973, 24-35-205(7) (Supp. 1982) states:
 In the case of any procurement for a contract for lottery tickets, lottery consulting services or lottery terminals or equipment having a value of one hundred thousand dollars or more . . . each prospective corporate supplier shall, at the time of submission of its bed or proposal, provide a current personal financial statement and individual federal and state income tax returns from the past three years for each of its officers and directors of all parent, intermediary and holding companies affiliated with the supplier.
It is unclear whether the "equipment" to which paragraph 7 refers must be lottery equipment or general types of equipment. Because the phrasing is somewhat ambiguous, resort must be made to applicable tenets of statutory construction. Lyman v. Townof Bow Mar, 188 Colo. 216, 533 P.2d 1129 (1975); C.R.S. 1973, 2-4-203. In Colorado, unless the intent of the legislature is clear, where general words follow the enumeration of particular classes of persons or things, the general words will be construed as applicable only to persons or things of the same general nature or class as those enumerated. Martinez v.People, 111 Colo. 52, 137 P.2d 690 (1943). See alsoBowman v. Eldher, 149 Colo. 551, 369 P.2d 977 (1962);Lyman v. Town of Bow Mar, supra. In this circumstance, all previous items are specifically denominated as lottery items. Therefore, the word "equipment" refers only to lottery equipment.
SUMMARY
1. The Lottery Commission may renew contracts for materials, equipment or supplies for an additional six months as long as the sole and unconditional discretion to renew remains with the lottery.
2. The Lottery Commission may not issue temporary licenses pending the outcome of investigations. However, there is no statutory requirement that an investigation be conducted prior to the issuance of a license. It is sufficient if the Lottery Commission obtains the necessary information through the application process to grant the license.
3. The word "equipment" as used in 24-35-205(7) (Supp. 1982) refers only to lottery equipment.
Very truly yours,
 DUANE WOODARD Attorney General
GAMBLING
C.R.S. 1973, 24-35-204(3)(1) C.R.S. 1973, 24-35-205(7) C.R.S. 1973, 24-35-206(1)
REVENUE, DEPT. OF
The Lottery Commission may renew contracts for an additional 6 months. The Lottery Commission may not issue temporary permits pending the outcome of an investigation. The word equipment as used in C.R.S. 1973, 24-35-205(7) refers only to equipment unique to the operation of a lottery.