248

477 A.2d 783

MAYOR AND CITY COUNCIL OF BALTIMORE
and Enviro-Gro

v.

BIO GRO SYSTEMS, INC. and Hyman A. Pressman.

No. 26, Sept. Term, 1984.

Court of Appeals of Maryland.

Per Curiam Order June 7, 1984.

Opinion July 12, 1984.

George Beall, Baltimore, for appellant, Enviro-Gro.

Ambrose T. Hartman, Deputy City Sol., Baltimore, for appellant, Mayor and City Council of Baltimore.

M. Albert Figinski, Baltimore, for appellee, Bio Gro Systems, Inc.

Hyman A. Pressman, Baltimore, in pro. per., other appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

## ORDER

PER CURIAM.

For reasons to be stated in an opinion later to be filed, it is this 7th day of June, 1984

ORDERED, by the Court of Appeals of Maryland, that the judgment of the Circuit Court for Baltimore City be, and it is hereby, affirmed; and it is further

ORDERED that the mandate shall issue forthwith, costs to be paid by the appellants.

## OPINION

MURPHY, Chief Judge.

The issue in this case is whether the extension by mutual consent of a competitively bid municipal contract beyond its

original term violates the competitive bidding requirements of the Baltimore City Charter.

Appellant Enviro-Gro, a joint venture, and appellee Bio-Gro Systems, Inc. carry on the business of hauling, loading, processing and disposing of sludge produced at waste water treatment plants throughout the United States. On December 10, 1981, the Mayor and City Council of Baltimore (the City) issued a Request for Proposal (RFP) inviting bids on a contract to remove and dispose of sludge from its Back River Waste Water Treatment Plant. Bids were solicited in compliance with the procedures required by Article VI, § 4 of the City Charter (1964 Rev.). The RFP provided that the duration of the contract would be two years. It also stated that the contract could be extended for an additional term of one or two years by mutual consent of the parties. Enviro-Gro was the low bidder and entered into a contract with the City on January 13, 1982, agreeing to dispose of the sludge at a price of $34.75 per wet ton. Special Provision 3 of the contract provided:

"This contract shall remain in force from the date of its execution until (2) two years from the date of the Notice [to] proceed with an option to extend it for one (1) or two (2) years by mutual agreement between the City and the contractor."

For reasons not relevant here, performance of the contract did not commence until July 1, 1982; by its terms, therefore, the contract expired on June 30, 1984.

Negotiations for an extension of the contract began in the fall of 1982. During the next twelve months, Enviro-Gro submitted four different proposals for a new contract on a variety of different terms. On October 26, 1983, the City and Enviro-Gro reached an agreement to extend the contract for two years beginning July 1, 1984 at a price of $32.75 per wet ton. The new agreement (referred to hereafter as the 1983 Contract) also contained a provision for two two-year extensions subject to the mutual agreement of the parties. At a public hearing held on December 28, 1983, Bio-Gro told the City Board of Estimates that it would do

the same work that Enviro-Gro was doing at $25 per wet ton. Bio-Gro indicated that this would have been its bid had the 1983 Contract been open to competitive bidding.

On January 25, 1984, the City filed a declaratory judgment action in the Circuit Court for Baltimore City to determine the validity of the 1983 Contract. Bio-Gro and Enviro-Gro were named as parties; appellee City Comptroller Hyman Pressman subsequently intervened. On March 12, 1984, the court (Karwacki, J.) entered a judgment declaring that the 1983 Contract was executed in violation of the City Charter's competitive bidding provision and therefore was *ultra vires* and void. In its oral opinion, the court stated that the two-year extension provided by Special Provision 3 of the original contract was "repugnant to the charter power of the Board and the City, since it avoids the necessity of competitively bid contracts by agreement between the City and a private contractor." The court continued:

> "I am convinced in construing the language of Special Provision 3, that we are not dealing here with an option as I understand the term option. We are dealing here with an agreement to negotiate at the conclusion of the original term of the contract."

The City and Enviro-Gro timely noted an appeal and we granted certiorari prior to consideration by the intermediate appellate court. On June 7, 1984, we issued a per curiam order affirming the judgment of the circuit court. We now explain our reasons.

 Article VI, § 4 of the City Charter requires, with certain exceptions not here applicable, that all contracts involving the expenditure of $5000 or more be awarded through the competitive bidding process as therein delineated.[1] The purpose of this provision is to obtain unrestricted

---

1. Section 4 states in pertinent part:
 "4. BOARD OF ESTIMATES—*Procurement.* (a) The Board of Estimates shall be responsible for awarding contracts and supervis-

competitive bidding for contracts and thereby safeguard public funds by preventing favoritism, collusion and extravagance. *Hylton v. City of Baltimore*, 268 Md. 266, 277, 300 A.2d 656 (1973); *Board of Education v. Allender*, 206 Md. 466, 475, 112 A.2d 455 (1955); *Hanna v. Bd. of Ed. of Wicomico Co.*, 200 Md. 49, 54, 87 A.2d 846 (1952); *Stoll v. Baltimore*, 163 Md. 282, 288, 162 A. 267 (1932); *Packard v. Hayes*, 94 Md. 233, 249, 51 A. 32 (1902). As the Charter provision is for the benefit of the public, "any private agreement which tends to prevent or restrict competition, or any scheme which has the effect of promoting favoritism, circumvents the statute and is contrary to the public policy of the State." *Hanna, supra*, 200 Md. at 55, 87 A.2d 846.

In *Browning-Ferris Ind. v. City of Oak Ridge*, 644 S.W.2d 400 (Tenn.App.1982), relied upon by the lower court, a municipality, after competitive bidding, entered into a five-year contract with a refuse disposal company; the agreement contained a provision authorizing the parties to negotiate for an extension of the contract. Before the contract expired, the city invited bids on a new five-year contract. Plaintiff, a competing refuse disposal firm, was the low bidder. The city rejected all bids, however, and elected to extend the original contract for an additional five-year term. The court declared the contract extension void under the municipality's charter requirement for competitive bidding—a requirement similar to the Baltimore City Charter provision. The court held that provisions which authorize further negotiations to extend the duration

ing all purchasing by the City to the extent and in the manner provided for in this section and elsewhere in the Charter.

"(b) In contracting for any public work, or the purchase of any supplies, materials, and equipment (unless otherwise provided by ordinance for foodstuffs and related perishables) or of any services other than professional services, involving an expenditure of five thousand dollars or more, for the City or by any municipal agency, advertisements for proposals for the same shall first be published at least twice in two or more daily newspapers published in Baltimore City unless otherwise provided by the Charter. The first publication shall be made not less than ten nor more than ninety days prior to the day set for opening the bids."

of a public contract are inoperable where such contracts are subject to competitive bidding.

Appellants attempt to distinguish *Browning-Ferris* on the ground that the term "negotiate" is not found in Special Provision 3. We think, however, that the two provisions have the same effect. An "extension by mutual consent of the parties" requires negotiation and agreement. Special Provision 3 is no different from the "authorization to negotiate" clause in *Browning-Ferris.*

*Miller v. State,* 73 Wash.2d 790, 440 P.2d 840 (1968) is also relevant. In that case, the state invited bids on a contract to supply its light bulb needs for a twelve-month period. Thereafter, instead of following competitive bidding procedures, the state annually negotiated one-year extensions of the original contract. The court held that after the original twelve-month contract expired, all subsequent state light bulb purchases had to be made through competitive bidding. The court concluded that the annual negotiated extensions were void.

In *Savage v. State,* 75 Wash.2d 618, 453 P.2d 613 (1969), the court distinguished between an agreement to negotiate an extension of a competitively bid contract and an option to extend the contract.[2] The contract in *Savage* was for a one-year term with an option giving the state the exclusive power to extend it for up to three additional years. The court said:

"This purchase agreement giving the state an option to extend the duration of the contract, under the same terms and conditions, for limited, specified periods does not create successive new contracts but, rather, merely ex-

---

**2.** An option is an irrevocable promise to keep an offer open for a specified period of time; it may be thought of as a "continuing offer" to the option holder who retains the exclusive power of acceptance. *See Post v. Gillespie,* 219 Md. 378, 384, 149 A.2d 391 (1959); Restatement (Second) of Contracts § 25 (1981); J. Calamari & J. Perillo, *Contracts* § 2–27 (2d ed. 1977); 1A *Corbin on Contracts* § 259 (1963); 1 *Williston on Contracts* § 61A (3d ed. 1957).

tends the duration of a single existing contract." *Id.*, 453 P.2d at 615.

Since no new contract was created, the court held that the decision on whether to extend the contract was within the administrator's discretionary authority to prescribe the terms of the proposal submitted for bids. No negotiation was involved because the state alone held the power to extend the contract. The distinction between an agreement to negotiate a contract extension and an option to extend a contract has been adopted by other courts that have addressed the issue. *See City of Lakeland, Florida v. Union Oil Co. of California*, 352 F.Supp. 758 (M.D.Fla.1973); *Hillsborough Co. Av. Auth. v. Taller & Cooper, Inc.*, 245 So.2d 100 (Fla.App.1971); *Browning-Ferris, supra.*

In *Bevilacqua v. Clark*, 377 Pa. 1, 103 A.2d 661 (1954), a municipality entered into a competitive bid contract with a firm to operate a golf driving range as a concession. The contract provided that if the concessionaire made permanent physical improvements to the facility after obtaining the city's approval, the latter could extend the duration of the contract—the length of the extension to depend on the value of the improvements made. The court said:

> "The fact that the term of the concession may be extended upon the approval of permanent improvements would not render the contract invalid where such extension is expressly included as one of the proposals submitted by all the bidders." *Id.*, 103 A.2d at 663.

The court noted, however, that the extension was not awarded as a result of private negotiations. The decision on whether the improvements should be made, the nature of the improvements and the duration of the extension was one reserved exclusively for the city. In effect, then, the contract provision in *Bevilacqua* gave the city an option to extend the concession. It did not merely authorize negotiations for an extension.

█ The original contract between Enviro-Gro and the City had a two-year term. When the two years expired, the

contract was terminated. The subsequent agreement between the parties for the two-year extension was a new contract. By its terms, the 1983 Contract clearly was covered by the competitive bidding provision of the Charter. The court below found correctly that the "option to extend" in Special Provision 3 was nothing more than an agreement by the parties to negotiate for an extension of the duration of the original contract. Indeed, Enviro-Gro concedes that an option, as that term is used in the law of contracts, was not involved. Moreover, the record clearly shows that, as contemplated by Special Provision 3, the City and Enviro-Gro conducted extensive negotiations, the result of which was the 1983 Contract. Although there is no evidence of impropriety in this case, the use of private negotiations to award government contracts invites favoritism, extravagance, fraud and corruption. The plain fact is that Enviro-Gro and the City engaged in just that type of activity that the competitive bidding requirement of the City Charter was designed to prevent. As we said in *Hanna, supra,* 200 Md. at 55, 87 A.2d 846, the City cannot do indirectly what it is prohibited from doing directly. Therefore, the 1983 Contract extending the original agreement between the parties, having been adopted by the City in violation of § 4 of Article VI of its Charter, is void and unenforceable.