603 So.2d 1289 (1992)
ST. LUCIE COUNTY and St. Lucie County Port and Airport Authority, Appellants,
v.
TOWN OF ST. LUCIE VILLAGE; Airport Watch, Inc.; James Grimes; William Thiess; Virginia Meeko; Nel Granitz; Robert Terry, Jr.; Mabel Fawsett; Barbara Platts; Terry L. Howard; Ronald Rohm; Katherine B. Goodwin; Steve Hoskins; Jan Lein; Jane Brooks; Harold Hogan; Astor Summerlin; Peggy Berg; Greg Rosslow; Deborah B. Jones; and Chris Haynes, Appellees.
Nos. 91-1358, 91-1359.
District Court of Appeal of Florida, Fourth District.
June 24, 1992.
Motions for Rehearing, Certification or Clarification Denied August 31, 1992.
*1290 Robert L. Nabors and Gregory T. Stewart of Nabors, Giblin & Nickerson, P.A., Tallahassee, and Daniel McIntyre, Fort Pierce, for appellants.
Richard V. Neill, Jr., of Neill, Griffin, Jeffries & Lloyd Chartered, Fort Pierce, for appellee-Town of St. Lucie Village.
Ben L. Bryan, Jr., of Fee, Bryan & Koblegard, P.A., Fort Pierce, for individual appellees.
John S. Yodice and Donald L. Hardison of Yodice Associates, Washington, D.C., and Cecile S. Hatfield, Miami, for amicus curiae, Aircraft Owners and Pilots Ass'n.
Alan C. Sundberg and F. Townsend Hawkes of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tallahassee, for amicus curiae, Florida Airport Managers Ass'n.
Thornton J. Williams, Gen. Counsel, Russell A. Waldon and Gregory G. Costas, Asst. General Counsels, Tallahassee, for amicus curiae Florida Dept. of Transp.
George A. Golder, Egerton K. van den Berg and John R. Hamilton of Foley & Lardner, Orlando, for amici curiae the City of Tallahassee, the Greater Orlando Aviation Authority, the Hillsborough County Aviation Authority, Metropolitan Dade County, the Sarasota-Manatee Airport Authority, and the City of Naples Airport Authority.
FARMER, Judge.
This case involves an injunction against any future expansion of a county airport. The Town of St. Lucie Village, joined by Airport Watch, Inc., and various other persons, filed a five-count Amended Complaint against St. Lucie County [County] and the St. Lucie County Port and Airport Authority [Authority], alleging that the airport was or would become a nuisance.
The St. Lucie County Airport [Airport] is a publicly owned airport facility located wholly within St. Lucie County. It is operated by the Authority, which is a special district created by the Florida Legislature in 1961. The Authority is governed by a board of commissioners who are actually the County Commissioners of County acting ex officio. The Authority is authorized by law to levy ad valorem taxes for the maintenance, operation and enlargement of the Airport. It is also authorized to derive revenues from the operation of the airport through leases, concessions, grants and land sales.
Only counts I and V are at issue in this appeal. Count I alleged that the Authority had entered into "Joint Participation Agreements" [JPA's] with the Florida Department of Transportation [FDOT] whereby FDOT agreed to advance funds to the Authority for the acquisition of adjacent land for the possible, future expansion of the Airport. The Authority promised to pay back the funds with interest when certain, expected federal funds became available or within 10 years from the date of acquisition, whichever was earlier. Plaintiffs alleged that these JPA's violate the Florida Constitution and statutory law. Count V alleged that operation of the Airport constituted a nuisance and, on that account, sought to enjoin the defendants from expanding the airport.
The trial court granted summary judgment in favor of plaintiffs on count I challenging the legality of the JPA's. After a bench trial, the court also entered judgment against County and Authority on Count V seeking the injunction. We reverse both decisions.
We begin with the JPA's. The court concluded that the JPA's violate Article VII, section 12, Florida Constitution, which states:
Section 12. Local bonds.  Counties, school districts, municipalities, special districts and local governmental bodies with taxing powers may issue bonds, certificates of indebtedness or any form of tax anticipation certificates, payable from ad valorem taxation and maturing more than twelve months after issuance only:
(a) to finance or refinance capital projects authorized by law and only when approved by vote of the electors who are owners of freeholds therein not wholly exempt from taxation; or

*1291 (b) to refund outstanding bonds and interest and redemption premium thereon at a lower net average interest cost rate.
We first note that the form of the JPA which the trial court construed is no longer the form used by FDOT and Authority. The JPA now states that the:
reimbursement obligation shall be payable solely from the non-ad valorem revenues of the Agency and shall not be or constitute a general obligation or indebtedness of the Agency or a `bond' within the meaning of any constitutional or statutory provision * * *.
In Rainhard v. Port of Palm Beach District, 186 So.2d 503 (Fla. 1966), the Florida Supreme Court held:
[O]nly bonds or certificates which directly obligate ad valorem taxing power contravene the constitutional provision requiring a freeholder election, and the incidental effect on use of ad valorem taxing power occasioned by pledging of other sources of revenue does not subject the bonds or revenue certificates to the constitutional requirement.
Here, the amended JPA specifically requires repayment only from non-ad valorem revenues. In other words, it excludes repayment from ad valorem revenues. Hence, the constitutional provision regarding an election is no longer implicated, even if it ever was. Thus, the conclusion of the trial court that the JPA's violate the constitution cannot stand.
The trial court, however, also concluded that the JPA's violate section 16, Chapter 88-515, Laws of Florida, the special act which established the Authority. Section 16 states:
The board for and on behalf of the [Authority] is authorized to provide from time to time for the issuance of bonds to pay all or part of the cost of acquisition, construction, reconstruction, or improvement of any facilities provided in this act. However, the issuance of such bonds shall have been approved at an election of the qualified electors who reside in such district, such election to be called, noticed, and conducted as provided by law. [e.s.]
The trial court also held that the JPA:
constitutes a contractual device for the present funding of tax revenues contemplated to be raised or made available for reimbursement in future years under which the obligee acquires a legal or equitable right to require by judicial process the repayment of money and therefore is a `bond' under Florida law.
Furthermore, the court noted that the repayment of the obligation occurs more than twelve months after issuance, that the bonds were not submitted to a vote of the electors for approval, and that the bonds did not restrict or prohibit payment from ad valorem taxation.
The Authority argues that it is empowered to enter into the JPA's by section 20(d) of the special act, which states:
The authority is hereby authorized to provide by resolution from time to time for the issuance of revenue certificates for the purpose of paying all or part of the costs of any future project of the authority; provided, such revenue certificates are payable solely from revenue derived from the sale, operation, or leasing of the project or projects and shall not be deemed to be a pledge of the full faith and credit or the ad valorem taxing power of the authority.
County and the Authority argue that the JPA's are essentially "revenue certificates" within the meaning of section 20(d), under which no vote of the electors is necessary.
We agree with County and the Authority. The language of the amended JPA's expressly states that the obligation shall not constitute a bond within the meaning of any constitutional or statutory provision. At the same time, the obligations designate non-ad valorem revenue as the sole fund from which they will be repaid. From a functional standpoint, we are unable to discern any difference between a pledge of lease revenues and a pledge of revenues received from the federal government for the expansion of airports. Because these obligations plainly come within the framework of section 20(d), a vote of the electorate *1292 is not required. We therefore conclude that the amended JPA's do not violate Chapter 88-515.
We next turn to the injunction against future expansion. The injunction is premised solely on the court's finding that the operation of the Airport is, or will become, a nuisance. The court's actual findings and conclusions on this subject are set forth in the following paragraphs, which say:
3. Judgment is entered in favor of the Plaintiffs and against the Defendants on Count V of the Complaint, being the Count asserting a nuisance and requesting the enjoining thereof. The Defendants are enjoined and restrained from physically expanding the nuisance that exists at the Airport. Specifically, the Defendants shall not extend the existing 6500 foot runway, construct a proposed 3700 foot runway to the North, or increase the load-bearing capacity of the runways to allow utilization by aircraft such as three-engine jets, DC-9's, 727's, or 747's.
4. Nothing contained herein shall be construed to prohibit usage of the existing physical facilities in conformance with Federal or State laws, rules or regulations.
From the evidence adduced, the foregoing findings/conclusions are predicated upon the present lawful operation of the airport, because there is no evidence in the record to support a finding that the current operation violates any existing law. It thus represents a decision by the judge that the lawful operation of an airport by a public authority may constitute a nuisance, or that future lawful expansion may result in a nuisance. However it is viewed, this injunction cannot stand.
A party seeking injunctive relief in Florida must demonstrate: (1) irreparable harm; (2) a clear legal right; (3) an inadequate remedy at law; and (4) consideration of the public interest. Hiles v. Auto Bahn Federation Inc., 498 So.2d 997 (Fla. 4th DCA 1986). We conclude that plaintiffs have failed to establish any of these requirements.
Plaintiffs' allegations lack any underlying legal claim of right to injunctive relief, which is entirely against considerations of the public interest. In effect, what plaintiffs sought was to enjoin the future exercise of legislative powers by a public body. It would be an exceedingly rare set of circumstances that would authorize judges within their equity jurisdiction to enjoin a legislative body from enacting future legislation. Without endeavoring to explain what facts would support such judicial action, it is enough to say that they do not exist here.
The question whether to expand a county airport is essentially a political one. Political questions are given, in our constitutional system of government, exclusively to the people's elected representatives, not to their judges. Partridge v. St. Lucie County, 539 So.2d 472 (Fla. 1989). As the court also said in Hillsborough County Aviation Authority v. Taller & Cooper Inc., 245 So.2d 100 (Fla. 1971):
So long as such a public agency acts in good faith, even though they may reach a conclusion on facts upon which reasonable men may differ, the courts will not generally interfere with their judgment, even though the decision reached may appear to some persons to be erroneous.
245 So.2d at 103. This sentiment is especially true as to future governmental action.
Florida recognizes common law causes of action for damages which stem from airport operations. Young v. Palm Beach County, 443 So.2d 450 (Fla. 4th DCA 1984); Foster v. City of Gainesville, 579 So.2d 774 (Fla. 1st DCA 1991) (substantial diminution in property value due to airport runway extension supported cause of action for damages); Fields v. Sarasota-Manatee Airport Authority, 512 So.2d 961 (Fla. 2d DCA 1987), rev. denied, 520 So.2d 584 (Fla. 1988). In sum, injury from airport operations is not irreparable, or a harm for which there is no remedy.
Another requirement for injunctive relief of prospective action is that the likelihood of the future conduct occurring must be *1293 real and exceedingly probable. In City of Coral Springs v. Florida National Properties Inc., 340 So.2d 1271 (Fla. 4th DCA 1976), we said:
To be the subject of an injunction, a prospective injury must be more than a remote possibility; it must be so imminent and probable as reasonably to demand preventive action by the court.
340 So.2d at 1272. In other words, the feared injury must be so near and present that the only way to avoid it is through injunctive relief. We cannot agree that plaintiffs proved that kind of imminency or certainty.
In this record, there is substantial evidence from the officials of both County and Authority that any planned expansion is years, if not decades, off into the future. At the same time, there is some evidence that land has already been acquired to lengthen runways, and indeed one runway has already been extended from 5,000 to 6,500 feet. Other evidence shows that activities of the officials and expenditures of the Authority are consistent with expansion of current facilities sooner rather than later.
Even if we could agree that the evidence of the likelihood of expansion preponderates in favor of plaintiffs, we are not able to agree that the expansion here is so likely and so imminent that an injunction could issue to stop it. The leading out-of-state case on the propriety of enjoining future expansion of an airport, Antonik v. Chamberlain, 81 Ohio App. 465, 78 N.E.2d 752 (1947), summed up the problem of an injunction:
[T]he damages resulting from the future construction and operation of the airport would be so speculative as to be incapable of definite ascertainment, because no one can know in what manner the airport will be operated, and hence what damage, if any, would result from its operation.
78 N.E.2d at 760.
Nor is this injunction founded on the notion that even if the expansion should occur tomorrow the operation of the airport would then become both illegal and a nuisance. Curiously, plaintiffs do not contend that the current operation of the airport is contrary to federal and state laws and regulations. Even more importantly, they make no attempt to show that an expanded airport could not prospectively operate within federal and state laws and regulations. The law in Florida about airport operations has long been that the lawful operation of such a facility in the "usual, normal and customary manner prescribed" cannot constitute a nuisance. Brooks v. Patterson, 159 Fla. 263, 31 So.2d 472 (1947).
County and Authority also contend that applicable federal law leads to the same conclusion. The Federal Aviation Act gives the federal government "full control over aircraft noise, preempting state and local control." City of Burbank v. Lockheed Air Terminal Inc., 411 U.S. 624, 633, 93 S.Ct. 1854, 1859, 36 L.Ed.2d 547 (1973). Discussing the issue of preemption, plaintiffs have argued here as follows:
The Plaintiffs recognize that while injunctions, by definition can enjoin only future acts, that generally the condition creating the complaint must be in existence. Because of the unique legal aspects of airport regulation, application of that doctrine to airports would result in no effective remedy for the Plaintiffs. The Plaintiffs believe that because of Federal preemption, little or nothing can be done about the operation of the airport as it exists. The Authority and the various Amici confirm that a major argument against any complaints made against the operation of airports is Federal preemption of the area. Therefore, persons who will be damaged by Jetports must act before the Jetport is constructed to have effective relief.
If federal law preempts the authority of states to issue injunctions against the existing, lawful operations of airports, we doubt that it would not similarly forbid injunctions against future operations. It defies reason to suppose that Congress intended to curtail state authority to interfere with airport operations, but that the states could get around the preemption by interfering with the operations before they get underway.
*1294 Plaintiffs are not left without a remedy under federal and Florida law. They have a "takings" claim for the diminution or destruction in value of their property caused by airport operations. See 49 U.S.C.App. § 1506 ("Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."); Bieneman v. City of Chicago, 864 F.2d 463 (7th Cir.1988), cert. denied, 490 U.S. 1080, 109 S.Ct. 2099, 104 L.Ed.2d 661 (1989) ("The Federal Aviation Act does not expressly pre-empt state damages remedies."); Greater Westchester Homeowners Ass'n v. City of Los Angeles, 26 Cal.3d 86, 603 P.2d 1329, 160 Cal. Rptr. 733 (Cal. 1979), cert. denied, 449 U.S. 820, 101 S.Ct. 77, 66 L.Ed.2d 22 (1980) (plaintiffs' nuisance claims against airport not preempted by federal law).
Plaintiffs base their entitlement to injunctive relief on what they describe as the "difficulty, if not the impossibility" of prevailing in an inverse condemnation action. But the mere difficulty in prevailing on a certain cause of action has never been understood as the lack of an adequate legal remedy. The determination whether there is an adequate remedy at law turns on the possibility of succeeding, not on its probability. Hiles, 498 So.2d at 999 (possibility that money judgment, even if obtained, will not be collectible irrelevant to test adequacy of remedy at law).
It is thus obvious that plaintiffs' case lacked even the core ingredients for the relief they sought. The final judgments in favor of the plaintiffs are hereby reversed and the cause remanded to the trial court with instructions to enter judgment in favor of the County and Authority.
REVERSED AND REMANDED WITH DIRECTIONS.
ANSTEAD, WARNER and FARMER, JJ., concur.