Bevilacqua, Appellant, *v.* Clark.

2

Argued January 14, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and AR-NOLD, JJ.

*I. Finkelstein*, for appellant.

*James A. Montgomery, Jr.*, Assistant City Solicitor, with him *Abraham L. Freedman*, City Solicitor and *Max W. Gibbs*, for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, March 22, 1954:

The question raised by this appeal is: may a municipal corporation *extend* a concession license agreement for a term certain without public competitive bidding when the original license agreement had been made after such bidding and contained a clause that it could be extended for a limited period? The court below decided that it could.

Plaintiff-appellant, the successful bidder in 1951 and unsuccessful bidder in 1952 for the operation of the golf driving range concession located at the Cobb's Creek Golf Course, seeks, by a bill in equity, to cancel the license granted to defendant McGettigan to operate the driving range. The concession is more fully described as the "Professional Shop and Golf Driving Range—Men's Club House, Cobb's Creek Golf Course"

in Fairmount Park, Philadelphia. The Mayor of the City of Philadelphia, the Procurement Commissioner, the Commissioners of Fairmount Park, and the City of Philadelphia were all joined as defendants by the plaintiff who brought the suit in his capacity as a taxpayer.

The proposals submitted, pursuant to public advertisement, by all bidders who were bidding for the operation of the concession for the year 1952, contained the following clause: "Where licensee considers that it is desirable or necessary to make permanent improvements to the concession structure, he shall submit a proposal to the Commission with a plan of the improvements and a statement of the actual cost thereof. If the Commission approves the construction of such permanent improvements, it will negotiate a supplemental agreement with licensee, providing that the license shall be extended for additional yearly terms not to exceed four years, depending upon the nature and cost of the improvements; and further providing that, if the Commission should elect to terminate the license within such extended period, it will pay to licensee such proportion of the actual cost of such improvements as the unexpired term bears to the total term of the license. In the event the license remains in effect for the full term agreed upon, no payment shall be due licensee."

The Procurement Commissioner granted or issued to defendant, the highest bidder, a license to operate the concession for the year 1952. The license contained the same provision set forth in the proposal as above stated. On May 21, 1952 the defendant submitted in writing to the Park Commission suggested permanent improvements to the concession structure *to be made at his own expense.* The Park Commissioners informed the Procurement Department on December 26, 1952 that they approved the defendant's suggestions and

stated that they desired McGettigan's license be extended through the calendar years 1953 and 1954 at the present annual rental. The signing of the extension agreement by the Procurement Commissioner and defendant McGettigan was delayed until May 6, 1953, as a result of the preparation, by the City Solicitor's office, of a new form of contract to be used for all new concessions.

Plaintiff contests the validity of the extension agreement on the ground that the clause in the original license contract providing for such extension does not adequately define the specifications upon which an extension is warranted, as required by section 8-201 of the Philadelphia Home Rule Charter. This section provides: "All concessions granted by any officer, department, board or commission of the City for the sale of products or the rendition of services for a consideration on City property shall be awarded by the Procurement Department only pursuant to the specifications of such officer, department, board or commission after competitive bidding and to the highest responsible bidder in a manner similar to that required by the preceding section relating to contracts for procurement involving an expenditure of more than $2,000.00." The procedures for competitive bidding are the only methods made applicable to concession contracts by the preceding section relating to procurement contracts.

This section of the charter, therefore, makes it mandatory for all concession contracts, upon being duly advertised and publicly bid upon, to be awarded to the highest bidder. The fact that the term of the concession may be extended upon the approval of permanent improvements would not render the contract invalid where such extension is expressly included as one of the proposals submitted by all the bidders. The possibility of an extension was included as a basis for the consideration of all bids. This principle is stated

in 63 C. J. S., Municipal Corporations, sec. 996 b. (2):
"The statutes requiring competitive bidding apply to
supplemental contracts covering items not provided for
by the terms of the original contract unless bids for
the original contract were made on the basis of a con-
templated extension of the work under supplemental
contracts to be made with the successful bidder without
further bidding; . . ."

In *Croasdill v. City of Philadelphia,* 18 Dist. 719,
721, Judge AUDENRIED said: ". . . Under certain con-
ditions the awarding of supplemental contracts with-
out previous advertising and bidding may be entirely
lawful. That additional work is ordered . . . is not
illegal, even without the taking of new bids, provided
that the original contract contemplated such an exten-
sion of the work, and that of that fact all who bid
thereon had notice, . . ."

It is evident from these guiding principles that the
Fairmount Park Commissioners could validly extend
this concession agreement without submitting the op-
eration of the concession again to public competitive
bidding. All who bid had notice of the conditions
upon which an extension of the license might be ob-
tained. Such conditions were fully advertised.

Furthermore, prudent business principles seem to
dictate the same result. When a concessionaire knows
that the term of the concession will be extended if per-
manent improvements are made, the chances are that
he will be very willing to make them. Such an arrange-
ment is also of benefit to the City. Valuable improve-
ments are made to the property of the City without
any cost to the taxpaying public.

The standards by which this agreement could be
extended are sufficiently definite to permit all who bid
thereon to know under what conditions the license
would be lengthened. The only term open to negotia-
tion is the period of extension, and even then there is

a four year limitation. There could be no negotiation on *the amount* of the rental because paragraph six of the license states: "... If the Commission approves the construction of such permanent improvements, the Procurement Commissioner will negotiate a supplemental agreement with licensee, *providing* that the license shall be *extended* for additional yearly terms not to exceed four years, depending upon the nature and cost of the improvements; ..." (Italics supplied). The very nature of the concession compels the conclusion that it would not be feasible to further define what improvements would be necessary before an extension would be granted. The improvements were to be made in the future. The costs of such improvements could not be estimated, therefore, at the time of the solicitation of bids. The court below aptly said with reference to this alleged absence of specifications: "... The City could have advertised for bids in terms of an annual fee for any reasonable period of time, but in order to retain flexibility in obtaining improvements to property of the City without cost to the taxpayer, it adopted the present method. In so doing, the City has not altered the terms of the proposal, nor awarded or continued the concession by private negotiations within the meaning of the rule enunciated in the procurement cases."

The extension of this concession license did not violate the provision of the Philadelphia Home Rule Charter which requires the adoption of an ordinance by City Council when real estate is leased for a period of more than one year. The appellant points to section 8-200 (3) of the Charter which states: "Contracts may be made for the leasing of real estate and for personal property to be supplied or services to be rendered over a period of more than one year only when permitted by ordinance. Otherwise no contract shall be binding upon the City unless there is an appropriation available for its payment: ..." This section is appli-

cable, as the court below pointed out, to contracts involving the expenditure of funds and not the receipt thereof as is here involved. The obvious purpose of this section was to prevent the burden of long-term obligations without the sanction of City Council. This section does not, therefore, apply to concession licenses.

There is obviously no merit in any of the other contentions of the appellant. They, therefore, need not be discussed.

The decree is affirmed at cost of appellant.