**DIRENZO COAL COMPANY,**
Petitioner,

v.

**DEPARTMENT OF GENERAL SERVICES, BUREAU OF PURCHASES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 3, 2001.

Decided July 5, 2001.

Reargument Denied Sept. 10, 2001.

Richard J. Wiest, Pottsville, for petitioner.

Peter M. Good, Harrisburg, for respondent.

Before GARDNER COLINS, Judge, KELLEY, Judge, and RODGERS, Senior Judge.

KELLEY, Judge.

Direnzo Coal Company (Direnzo) petitions this Court to review a determination of the Department of General Services, Bureau of Purchases (DGS) which denied Direnzo's letter of protest regarding bid specifications for the statewide anthracite coal contract. We vacate and remand.

DGS procures anthracite coal on a statewide contract for all agencies under the Governor's jurisdiction, as well as some independent agencies. DGS issued a detailed bid specification, Anthracite Coal Specification C 80, setting forth technical requirements for coal vendors desiring to bid. The most recent C 80 Specification, effective April 19, 2000, required a 12.6% standard for ash content. Ash content is derived by dividing the heating value of anthracite coal by 1000 (B.T.U./1,000).[1] Prior to 1997, the allowable ash content for anthracite coal was 14%.

On June 22, 2000, Direnzo filed a protest under the Commonwealth Procurement Code (Procurement Code)[2] wherein Direnzo alleged that the 12.6% ash content specification is unduly restrictive and should be raised to 14%. On June 30, 2000, DGS denied Direnzo's protest and held that C 80 Specification is not unduly restrictive. From this decision, Direnzo has filed a petition for review in our appellate jurisdiction.

---

1. For coal meeting the specification requirements for heat content of 12,600 B.T.U./1000, the allowable ash content is 12.6%.

2. 62 Pa.C.S. §§ 101–4509.

■ As a preliminary matter, we find it necessary to first address, *sua sponte,* whether Commonwealth Court has appellate or original jurisdiction of decisions issued under the Procurement Code. Under the Judicial Code, this Court has appellate jurisdiction of appeals from final orders of government agencies having Statewide jurisdiction. Section 763 of the Judicial Code, 42 Pa.C.S. § 763. Conversely, this Court has "original jurisdiction of all civil actions or proceedings" against the Commonwealth government, including any officer thereof, acting in his official capacity, with limited exceptions. Section 761 of the Judicial Code, 42 Pa. C.S. § 761. The Commonwealth Court also has original jurisdiction of all civil actions or proceedings that are vested by statute. *Id.* Matters that are placed within this Court's appellate jurisdiction under Section 763 are excluded from the Court's original jurisdiction under Section 761. *Busch v. Jeffes,* 124 Pa.Cmwlth. 411, 556 A.2d 500 (1989), *cert. denied, Busch v. Owens,* 495 U.S. 908, 110 S.Ct. 1931, 109 L.Ed.2d 295 (1990).

The Procurement Code sets forth a mandatory and exclusive administrative remedy for disappointed bidders. Section 1711(a) of the Procurement Code, 62 Pa. C.S. § 1711(a), provides a general right of protest to "[a]n actual or prospective bidder, offeror or contractor who is aggrieved in connection with the solicitation or award of a contract." The aggrieved party may protest to the head of the purchasing agency[3] in writing. Section 1711(a) of the Procurement Code. Section 1711(c) provides that if the protest is not resolved by mutual agreement, the head of the purchasing agency shall promptly, but in no event later than 120 days from the filing of the protest, issue a decision in writing. Section 1711(c) of the Procurement Code. The decision shall state the reasons for the action taken and shall inform the protestant of his right to *"file an action* in Commonwealth Court" as provided in subsection (e). *Id.* (emphasis added). Subsection (e) provides that a decision "shall be final and conclusive unless a person adversely affected by the decision *files an action* ... in Commonwealth Court within 14 days of receipt of the decision." Section 1711(e) of the Procurement Code (emphasis added). No "action may be commenced in Commonwealth Court ... until the protestant has exhausted the administrative remedies provided for in this section." *Id.*

■ Unfortunately, the term "action" as used within the Procurement Code is not defined. While the term "action" can connote matters within this Court's original jurisdiction, we believe, for the reasons that follow, that the General Assembly has employed the phrase more as a term of art and does not intend for Procurement Code matters to be within our original jurisdiction.

■ To begin, prior to the enactment of the Procurement Code, only a taxpayer of the jurisdiction funding the contract had standing to challenge the improper award of a contract; a disappointed bidder lacked standing to challenge its award because a disappointed bidder was not aggrieved because it had no property interest to receive the contract. *American Totalisator Co.,*

---

**3.** "Purchasing agency" is defined as a "Commonwealth agency authorized by this part or by other law to enter into contracts for itself or as the agent of another Commonwealth agency. When purchasing for another Commonwealth agency, the purchasing agency acts on behalf of the principal which needs the supplies, services and construction and shall coordinate and cooperate with that agency." Section 103 of the Procurement Code, 62 Pa.C.S. § 103.

*Inc. v. Seligman,* 489 Pa. 568, 414 A.2d 1037 (1980). With the enactment of the Procurement Code, disappointed bidders have been given standing to protest the solicitation or the award of a contract under the Procurement Code without having to assert taxpayer standing.[4]

By creating an administrative remedy for disappointed bidders, the General Assembly has removed these cases from this Court's original jurisdiction. *See Pennsylvania Social Services Union v. Department of Public Welfare,* 699 A.2d 807, 813 (Pa.Cmwlth.1997) ("Where an administrative remedy is statutorily prescribed, the general rule is that a court is without original jurisdiction to entertain the action."). By directing protestors aggrieved by a decision to file an action in Commonwealth Court, the General Assembly has intended to provide for a right to "judicial review" in our appellate jurisdiction.

Appellate jurisdiction is consistent with the function of an administrative remedy. Appellate jurisdiction also comports with the "final and conclusive" nature of the order that concludes the administrative process. Section 1711(e) of the Procurement Code. Such interpretation would also lend consistency with other provisions of the Procurement Code which provide for judicial review by directing aggrieved parties to file an "appeal" with Commonwealth Court. *See* Section 1726 of the Procurement Code, 62 Pa.C.S. § 1726 ("Any person, including a Commonwealth agency, aggrieved by a decision of the Board of Claims may appeal to the Commonwealth Court under 42 Pa.C.S. § 763(a)(1) (relating to direct appeals from government agencies) within 30 days after certification of the decision."); Section 531(e) of the Commonwealth Procurement Code, 62 Pa.C.S. § 531(e) (This section relating to debarment and suspension following a hearing, provides that the "decision ... shall be final and conclusive unless the contractor appeals to the Commonwealth Court under 42 Pa.C.S. § 763(a)(1)."). To conclude otherwise would negate the establishment of an administrative remedy under the Procurement Code and create an absurd result not intended by the General Assembly. We, therefore, conclude that this matter does not belong within our "original jurisdiction," but rather in our "appellate jurisdiction."

Having excluded the matter from our original jurisdiction and determined that such matters belong within our appellate jurisdiction, the question remains whether this Court is able to exercise appellate review at this time. The right of judicial review of an administrative decision occurs only when there has been an "adjudication" as defined under the Administrative Agency Law. Section 702 of Administrative Agency Law, 2 Pa.C.S. § 702.[5] "Adjudication" is defined as "[a]ny final order, decree, decision, determination or ruling by an agency affecting personal or property rights, privileges, immunities, duties, liabilities or obligations of any or all of the parties to the proceeding in which the

4. The enactment of the Procurement Code, however, has not taken away the right of taxpayers to bring an action in equity before this Court to enjoin the award of a contract when the bidding requirements were not followed. *On–Point Technology Systems, Inc. v. Department of Revenue,* 753 A.2d 911 (Pa. Cmwlth.2000) (single judge opinion by Pellegrini, J.). An aggrieved taxpayer, who lacks standing to file a protest under the Procurement Code, may still file an equity action in this Court's original jurisdiction to protest the award of a contract. *Id.*

5. Section 702 provides that any person aggrieved by an "adjudication" of a Commonwealth agency shall have the right to appeal therefrom.

adjudication is made." Section 101 of Administrative Agency Law, 2 Pa.C.S. § 101.

A Commonwealth agency may issue an "adjudication" only after compliance with the Administrative Agency Law relating to practice and procedure of Commonwealth Agencies. Section 504 of the Administrative Agency Law, 2 Pa.C.S. § 504, provides that "[n]o adjudication of a Commonwealth agency shall be **valid** as to any party unless he shall have been afforded reasonable notice of a hearing and an opportunity to be heard. All testimony shall be stenographically recorded and a full and complete record shall be kept of the proceedings." (Emphasis added). *See Callahan v. Pennsylvania State Police*, 494 Pa. 461, 431 A.2d 946 (1981); *AT & T Communications of Pennsylvania, Inc. v. Pennsylvania Public Utility Commission*, 131 Pa. Cmwlth. 390, 570 A.2d 612 (1990).

■ Before this Court for review is a decision issued by DGS, an administrative agency. Section 101 of Administrative Agency Law. *See Pennsylvania Industries for the Blind and Handicapped v. Department of General Services*, 116 Pa.Cmwlth. 264, 541 A.2d 1164 (1988). While DGS's decision appears to be an appealable adjudication, Direnzo has not been afforded reasonable notice of a hearing and an opportunity to be heard. Having failed to comply with statutory requirements of notice of a hearing and opportunity to be heard, DGS's decision does not constitute a valid adjudication under Administrative Agency Law. *See Callahan* (The failure to provide a proper hearing would render the adjudication invalid). As a result, DGS's decision does not provide an adequate basis for an appeal. Therefore, we find it necessary to remand this matter to DGS, as the purchasing agency authorized to resolve protests and the agency with expertise in procurement matters, for purposes of conducting an administrative hearing in accordance with the terms of the Administrative Agency Law. *See Turner v. Pennsylvania Public Utility Commission*, 683 A.2d 942 (Pa.Cmwlth.1996) (When there are no specific provisions regarding the adjudicatory actions of an agency, Administrative Agency Law provides the default mechanism for the provision of hearings and for appeals from administrative adjudications, which comport with due process requirements.).

Accordingly, the decision issued by DGS is vacated and this matter is remanded to DGS for purposes of conducting an administrative hearing in accordance with the terms of the Administrative Agency Law.

### ORDER

AND NOW, this *5th* day of *July,* 2001, the decision of the Department of General Services (DGS) denying Direnzo Coal Company's protest is vacated and this case is remanded to the DGS for an administrative hearing in accordance with the terms of the Administrative Agency Law, which shall be scheduled within thirty (30) days of this order.

Jurisdiction relinquished.