803 A.2d 1175

ON–POINT TECHNOLOGY SYSTEMS, INC., Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF REVENUE, and Robert A. Judge, Secretary of Revenue, Appellee.

Supreme Court of Pennsylvania.

Argued May 14, 2002.

Decided Aug. 20, 2002.

Robert V. Dell'Osa, Mary Craine Lombardo, Robert William Hayes, for On–Point Technology Systems, Inc.

Jill Marie Strouss, Thomas Judge Gohsler, Julia Ann Sheridan, for the Department of Revenue.

Before: ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## OPINION

Chief Justice ZAPPALA.

This is a direct appeal from the order of the Commonwealth Court entering judgment in favor of Appellees, and against Appellant, in an action brought by Appellant seeking declaratory and injunctive relief. For the reasons that follow, we reverse.

In October of 1992, Appellee, the Department of Revenue, issued a request for proposals (RFP) on behalf of the Pennsylvania Lottery for instant ticket vending machines and related services. These types of machines dispense lottery tickets upon the insertion of money by the patron. After receipt of proposals, the Department contracted with Appellant for the purchase of instant ticket vending machines.

In August of 1995, a new RFP issued for the purchase of instant ticket vending machines and related services. Again, Appellant was selected as the winning bidder. In July of 1996, however, the August 1995 RFP was cancelled.

Again, in 1997, the Department issued an RFP for the purchase of instant ticket vending machines and, again, Appellant was the lowest bidder. The Department, however, decided not to procure any instant ticket vending machines as a result of the RFP.

On August 12, 1997, the current RFP issued for an on-line games system and related services. The on-line system consisted of computer hardware and software, communications links, interfaces, retailer and management terminals and the on-line gaming system computer configuration including, but

not limited to, all modems, queuing, protocol and polling devices.

The August 1997 on-line system RFP also included a section titled "Options." That section directed proposers for the on-line games system to submit prices for various other products, including "Player Activated Terminals," which the Department conceded is a term synonymous with instant ticket vending machines. Reproduced Record at 57a–58a. Proposers were required to submit proposals for the listed "options," including pricing in the cost proposal. The RFP, however, admonished proposers not to include cost information regarding options in the technical proposal. The RFP provided that "Costs (set forth in the Options Proposals only) and availability *will not* be used in the evaluation process." Reproduced Record at 555a (emphasis added).

The Department received various proposals in response to the August 1997 RFP for an on-line games system. After evaluating those proposals, the Department selected the proposal submitted by Automated Wagering, Inc., as the most responsive to the Commonwealth's needs. Consistent with the statement in the RFP, the price of "options" played no part in evaluating the proposals or the selection of Automated Wagering.

In February 1998, the Department entered into a contract with Automated Wagering for "the design and production of lottery games systems." Reproduced Record at 363a. The contract did not contain any terms, e.g., price, quantity, etc., for any option. Rather, the contract stated that if the Department chose to exercise an "option," the price and terms would be "mutually agreed upon by the parties." Reproduced Record at 599a. The agreement was to run for a term of five years and could be extended by additional one-year periods to a term of ten years.

Following the execution of the foregoing contract, the Commonwealth Procurement Code was enacted on May 15, 1998, to be effective in 180 days. Prior to the Code's effective date, a first amendment to the contract between the Department

and Automated Wagering was executed extending the contract term to December 31, 2001.

On December 16, 1999, after the effective date of the Code, the Department and Automated Wagering executed a second amendment to the February 1998 contract. The second amendment called for Automated Wagering to "furnish" 2,400 instant ticket vending machines to the Department at a cost of $225 per month, per machine.

In connection with entering into the second amendment, the Department did not issue an RFP or an invitation for competitive bids for instant ticket vending machines. Pursuant to the second amendment, the instant ticket vending machines were not linked to the on-line system, but the option to link them in the future remained.

Appellant attempted to negotiate with Automated Wagering to supply the machines pursuant to the second agreement, but in January of 2000, Appellant saw a press release from Interlott Technologies stating that it had received an order from Automated Wagering to provide the 2,400 instant ticket vending machines.

Appellant instituted this action on March 16, 2000, in its capacity as a Pennsylvania taxpayer. Appellant filed the action in the Commonwealth Court, seeking a declaration that the second amendment to the February 1998 contract on December 16, 1998, was an entirely new contract subject to the Commonwealth Procurement Code. Moreover, Appellant sought a declaration that the "new" contract entered into between the Department and Automated Wagering was illegal since an RFP did not issue regarding instant ticket vending machines, the subject of the contract. In the alternative, Appellant sought relief claiming that even if the amendment was held not subject to the Procurement Code, that it violated the common law rule that once a competitive procurement process is used, it must be used properly. By reason of the alleged statutory (or common law) defects, Appellant contended that the court should declare the amendment illegal, or order rescission and permanently enjoin its performance.

The lower court rejected Appellant's argument and held that the second amendment was not a new contract subject to the Procurement Code requirement that a competitive bidding process must be utilized. The court based its decision upon the fact that the original proposals submitted to the Department contemplated that an extension of the work thereunder, by way of future supplemental contracts, could be entered between the Department and the selected proposer. Thus, the court held that all persons participating in the original bidding process were put on notice that such supplemental contracts could be formulated in this regard.

Based upon this same reasoning, the court rejected Appellant's second argument that the Department violated the common law rule regarding competitive bidding since the court found that no competitive bid for supplemental work originally contemplated by the proposal was necessary.

Appellant now asserts that the lower court erred when it concluded as a matter of law that the Department of Revenue did not violate Pennsylvania procurement laws by acquiring instant ticket vending machines for the Pennsylvania Lottery without using the competitive bidding or competitive proposal process. We agree.[1]

The Procurement Code applies to "every expenditure of funds, other than the investment of funds, by Commonwealth agencies under any contract...." 62 Pa.C.S. § 102(a). The term "contract" is defined as a "type of written agreement, regardless of what it may be called, for the procurement or disposal of supplies, services or construction." 62 Pa.C.S. § 103. "Procurement" means "buying, purchasing, renting, leasing, licensing or otherwise acquiring any supplies, services or construction," while the term "supplies" includes equipment, materials, and tangible personal property. *Id.*

In addition to the foregoing, the Code specifies that contracts for the procurement or disposal of supplies, services or

1. Appellant also asserts that the lower court erred in admitting testimony concerning the benefits to the Lottery from the acquisition of the instant ticket vending machines. Given our disposition of Appellant's first claim, we need not address this issue.

construction "*shall* be awarded by competitive sealed bidding." 62 Pa.C.S. § 511, 512(a) (emphasis added).

Appellant argues that the second amendment to the contract entered between the Department and Automated Wagering, which was entered after the effective date of the Code, was subject to the Code requirement of competitive bidding since the contract called for the "furnishing" of instant ticket vending machines. We agree, as the plain language of the Code so specifies.

The lower court, in rejecting the assertion that the second amendment was subject to the Code's competitive bidding requirement, relied upon the reasoning set forth in our decision in *Bevilacqua v. Clark*, 377 Pa. 1, 103 A.2d 661 (1954). There we held that a municipal corporation could extend a concession license agreement from one year to three years without public competitive bidding when the original agreement had been made after such bidding and where the agreement contained a clause that the agreement could be extended for a limited period. The provision at issue in *Bevilacqua* specified, in part, that:

> Where a licensee considers that it is desirable or necessary to make permanent improvements to the concession structure, he shall submit a proposal to the Commission with a plan of the improvements to the Commission and a statement of the actual cost thereof. If the Commission approves the construction of such permanent improvements, it will negotiate a supplemental agreement with licensee, providing that the license shall be extended for additional yearly terms not to exceed four years. . . .

*Id.* at 662. We rejected the appellant's argument that extension of the concession agreement at issue was invalid since the original contract providing for such extension did not adequately define the specifications upon which an extension would be warranted. To the contrary, we held that standards by which the agreement could be extended were sufficiently definite to permit all who bid thereon to know under what conditions the license would be lengthened. We noted that the only term open to negotiation was the term of the exten-

sion and that was specifically limited to four years. We cited to 63 C.J.S., Municipal Corporations, Section 996 b(2), for the proposition that:

statutes requiring competitive bidding apply to supplemental contracts covering items not provided for by the terms of the original contract unless bids for the original contract were made on the basis of a contemplated extension of the work under supplemental contracts to be made with the successful bidder without further bidding;. . . .

*Id.* at 663.

The trial court here relied upon this same reasoning in concluding that the second amendment was valid absent competitive bidding. Specifically, the court stated that

Close scrutiny of the request for proposals of August 1998, the proposal of [Automated Wagering] of October, 1998, and of the contract of February 23, 1998, reveals the following.

The furnishing and maintenance of instant ticket vending machines (or instant games player-activated terminals) was set forth as an option in the request for proposals. Costs had to be set forth but were not considered in the award. Thus, all vendors had notice of the option and the fact of potential future negotiations thereon. [Automated Wagering's] proposals included cost projections for furnishings [sic], service and maintenance of the instant ticket vending machines and the original contract incorporated by reference the prior request for proposals and the proposals (included the projected costs) and stated that the optional acquisitions of services, including the machines, would be negotiated by the parties. Not only were the machines specified but also installation and maintenance costs were projected in the proposals. The proposers all had notice of the foregoing and that future negotiations were necessary if the Commonwealth chose to exercise its options.

Trial court decision at 16–17. Thus, the court held, pursuant to *Bevilacqua,* that competitive bidding regarding the subject

of the second amendment was unnecessary as it was an extension of the work contemplated in the original proposals.

Contrary to the lower court's analysis, we find our decision in *Bevilacqua* distinguishable, and therefore, inapplicable, to the facts of this case. Specifically, in *Bevilacqua*, the subject matter of the contract at issue—a license to operate a concession stand—had in fact been competitively bid prior to formation of the initial one-year contract. Here, by contrast, the subject matter of the second amendment, instant ticket vending machines, was not competitively bid. In fact, any information in the original bid relating to this subject was specifically excluded from being considered. Moreover, unlike the contract at issue in *Bevilacqua*, here, the original contract entered into between the Department and Automated Wagering did not obligate the Department to acquire any instant ticket vending machines. Nor did it contain any terms regarding price or quantity for the acquisition of such machines, but merely indicated that mutually agreeable terms regarding price and quantity could be made in the event the Department sought to obtain such machines.

Thus, we agree with Appellant that because the original contract failed to contain any essential terms regarding the future acquisition of instant ticket vending machines, the second amendment was not an extension of the work contemplated by the original agreement but instead was a new contract subject to the Procurement Code and the mandatory competitive bidding procedure set forth therein.

Based on the foregoing, the order of the Commonwealth Court is reversed and the matter is remanded for further proceedings consistent with this opinion.

Justice EAKIN files a dissenting opinion.

Justice EAKIN, dissenting.

In February 1998, the Department entered a contract with Automated Wagering after, as my colleagues point out, the Department "selected the proposal ... most responsive to the Commonwealth's needs." The proposals included "options"

(and prices) for the vending machines. The question we are presented is whether the December 1999 agreement to furnish those machines is a new contract, or an amendment of the February 1988 contract. While my colleagues conclude it is the former, I cannot find reason to disagree with the Commonwealth Court, which found the opposite.

The RFP shows an obvious intent to deal with one vendor, rather than a different vendor for every different type of lottery sale possible; avoiding such fragmentation was hardly a covert or undesirable goal. While the online aspects were the primary focus, the RFP clearly contemplated a much wider relationship, including vending machines.

That is, if prices of vending machines were not considered, why speak to them at all? The only reason was to establish that the vendor could provide them at some reasonable price; if the vendor could not, its response to the RFP would be less attractive. Prices of vending machines were not determinative, but the ability to provide services beyond online gaming was a consideration when determining which proposal was most "responsive to the Commonwealth's needs."

Given the language of the RFP and original contract, I find the December 1999 agreement to be an amendment within the clear contemplation of the original agreement, an option to be exercised by the parties. Once the overall offer was accepted and the contract signed, the options were resolved as an extension of that agreement-not as a new offer and new acceptance, but an exercise of something called for in the original agreement. While my colleagues express an inviting analysis, I cannot disagree with the court below and must respectfully dissent.