**Jon BALSBAUGH and Chris
Le Comte, Petitioners,**

v.

**COMMONWEALTH DEPARTMENT
OF GENERAL SERVICES and Alexander Constructors, Inc., Respondents.**

Commonwealth Court of Pennsylvania.

Argued Dec. 3, 2002.

Decided Jan. 2, 2003.

Amy K. Pohl, Pittsburgh, for petitioners.

José E. Morales, Harrisburg, for respondent, Dept. of General Services.

Bridget E. Montgomery, Harrisburg, for respondent, Alexander Constructors, Inc.

BEFORE: PELLEGRINI, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Before this Court are preliminary objections filed by Alexander Constructors, Inc. (Alexander) and the Commonwealth De-

partment of General Services (DGS) in response to a petition for review in the nature of a complaint in equity filed by Jon Balsbaugh and Chris Le Comte (Petitioners) as a result of DGS awarding a general construction contract to Alexander as low bidder when, among other defects, it failed to sign the bid.

On October 17, 2001, DGS published a Notice to Bidders requesting the submission of competitive public bids for the general construction of a new chemistry building on the Pennsylvania State University main campus in State College, Pennsylvania. Only two bids were received for the general construction contract on the project, one from Alexander and the other from Leonard S. Fiore, Inc. (Fiore). After the bids were opened on December 5, 2001, Fiore requested to see Alexander's bid, but DGS inexplicably and improperly refused the request.[1] By letter dated January 17, 2002, DGS issued a Notice of Award to Alexander for the general construction contract, and on February 28, 2002, a contract with Alexander was executed.[2] On March 5, 2002, DGS issued a Notice to Proceed authorizing Alexander to commence working and incurring costs.[3]

Fiore's counsel sent DGS a letter dated March 13, 2002, again requesting to see Alexander's bid documents, and on March 25, 2002, DGS sent Fiore the requested information. Counsel for Fiore submitted a bid protest to DGS on March 28, 2002, arguing that Alexander's bid was defective and its contract should be rendered void because, among other reasons not relevant now, the bid was not signed. By letter dated April 5, 2002, DGS responded to that protest explaining that while Alexander's bid was not signed as required, pursuant to Section 1743 of the Commonwealth Procurement Code, 62 Pa.C.S. § 1743,[4] there was no evidence that Alexander had acted fraudulently or in bad faith, and its decision to ratify the Alexander contract was in the best interest of the Commonwealth. Fiore did not appeal from that decision.

Subsequently, on May 21, 2002, counsel representing Petitioners who were employees of subcontractors used by Fiore (but not representing Fiore) filed with this Court a petition for review in the nature of a complaint in equity in our original juris-

---

**1.** *See* footnote 5.

**2.** Three other contracts were also awarded for HVAC, plumbing and electrical construction.

**3.** Similarly, the other contractors who were awarded contracts were also issued Notices to Proceed.

**4.** 62 Pa.C.S. § 1743 provides:
If after the execution of a contract it is determined that a solicitation or award of a contract is in violation of law, then:
(1) If the person awarded the contract has not acted fraudulently or in bad faith:
(i) the contract may be ratified or affirmed provided it is determined by the purchasing agency that doing so is in the best interest of the Commonwealth.
(ii) the contract, with the consent of all parties, may be modified to comply with the law; or

(iii) the contract may be terminated and the person awarded the contract shall be compensated for the actual expenses reasonably incurred under the contract prior to the termination. Such compensation shall not include loss of profit, loss of use of money or administrative or overhead costs.
(2) If the person awarded the contract has acted fraudulently or in bad faith:
(i) the contract may be declared void;
(ii) the contract, with the consent of all parties, may be modified to comply with the law; or
(iii) the contract may be ratified and affirmed, provided it is determined by the purchasing agency, if that action is in the best interest of the Commonwealth and without prejudice to the right of the Commonwealth agency to damages as may be appropriate.

diction alleging that Fiore was denied the right to review Alexander's bid documents before the contract was awarded in violation of 4 Pa.Code § 69.4(d),[5] and after being given the bid documents, it was determined that they did not comply with the mandatory bidding requirements because Alexander's bid was not signed and its bid failed to include mandatory Minority Business Enterprise (MBE) subcontractor solicitation information.[6] Petitioners sought preliminary and permanent enjoinment of DGS' award and contract with Alexander, rescission of the contract awarded to Alexander, direction that DGS reject the bid submitted by Alexander and award the contract to Fiore, and, in the alternative, direct DGS to reject the bid by Alexander and rebid the general construction contract.[7]

■■■ In response to that petition, DGS and Alexander filed preliminary objections that are presently before this Court in which they allege the following:

- Petitioners lack standing to sue because they do not allege any harm to them that is substantial, direct and immediate and if they are acting as "straw parties" for Fiore, their remedy

is under the Procurement Code which sets forth the mandatory and exclusive administrative remedy to resolve bid disputes and removes bid protests from this Court's original jurisdiction;

- Petitioners' complaint is legally insufficient because although Alexander's bid sheet was not signed, it was accompanied by a signed construction bid bond, and a binding contract between DGS and Alexander resulted from the bid process. Neither the complaint nor the petition for emergency relief alleges that Fiore's bid was lower than Alexander's bid. As to the MBE sheet, it was submitted with the bid as required, and Powell Steel and other minority contractors were listed as the minority firms who were solicited by or who contacted Alexander; and

- Petitioners' action is barred by laches because they were in receipt of Alexander's bid documents since at least March 25, 2002, and notified by DGS as of April 5, 2002, DGS had ratified the contract with Alexander, yet they waited 48 days after April 5, 2002, to file their action causing Alexander, DGS, multiple subcontractors, suppli-

---

**5.** 4 Pa.Code § 69.4(d) provides:

> Bids shall be opened publicly in the presence of one or more witnesses on the date fixed for the opening of bids at the hour designated in the invitation to bid. After the bids are opened, they shall be tabulated and *will be subject to examination by bidders*. (Emphasis added.)

**6.** Specifically, the petition alleged that Alexander received a competitive proposal from Powell Steel Corporation, a certified minority business enterprise steel subcontractor, for work on the project. However, Alexander's bid failed to identify Powell's proposal, and instead, the solicitation and commitment sheet submitted with Alexander's bid stated that no bid was received from minority bidders.

**7.** Counsel for Petitioners also filed an emergency petition for preliminary injunctive relief. Even though we denied relief, on p. 4 of his opinion, Judge Morgan stated:

> We will, however, make the observation that DGS' refusal to allow Fiore to review Alexander's bid documents for almost four months, until after the contract had been executed, is inexcusable. Uncertain as may be the efficacy of a protest under Section 1711(a) in light of the discretion to waive defects conferred upon a purchasing agency by Section 1843, conduct by an agency as witnessed in this case could thwart any meaningful application of the protest section.

(*Jon Balsbaugh and Chris Le Comte v. Department of General Services and Alexander Constructors, Inc.*, No. 332 M.D. 2002, filed July 2, 2002).

**40**

ers and vendors to incur extensive additional costs. Such a delay is unjustified and causes prejudice to DGS, Alexander and the subcontractors.[8]

We will address DGS' and Alexander's preliminary objections *in seriatim.*[9]

## I.

### STANDING

In response to DGS' and Alexander's contention that Petitioners lack standing to bring this action, Petitioners argue that they are taxpayers in this Commonwealth, and violations of bidding requirements may be brought against Commonwealth agencies [10] by any person that pays taxes to the jurisdiction funding the project at issue. In *Direnzo Coal Company v. Department of General Services, Bureau of Purchases,* 779 A.2d 614 (Pa. Cmwlth.2001), a case involving a disappointed bidder, we explained that the Procurement Code had changed certain aspects of the law regarding standing with respect to disappointed bidders, particularly, the requirement that a disappointed bidder had to be a taxpayer of the entity whose action he was challenging. We stated:

8. Specifically, DGS avers that as of November 7, 2002, the overall project was approximately 25% complete and contractors had submitted invoices for payment totaling $4,432,362.20.

9. In ruling on preliminary objections, we must accept as true all well pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. *Marrero by Tabales v. Commonwealth of Pennsylvania,* 709 A.2d 956 (Pa.Cmwlth. 1998), *affirmed,* 559 Pa. 14, 739 A.2d 110 (1999). In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them. *Id.*

With the enactment of the Procurement Code, disappointed bidders have been given standing to protest the solicitation or the award of a contract under the Procurement Code without having to assert taxpayer standing.

*Id.* at 617. We went on in footnote number 4 to further explain:

The enactment of the Procurement Code, however, has not taken away the right of taxpayers to bring an action in equity before this Court to enjoin the award of a contract when the bidding requirements were not followed. [Citing *On–Point Technology Systems, Inc. v. Department of Revenue,* 753 A.2d 911, 914 (Pa.Cmwlth.2000), *reversed and remanded on other grounds,* 569 Pa. 236, 803 A.2d 1175 (2002)]. An aggrieved taxpayer, who lacks standing to file a protest under the Procurement Code, may still file an equity action in this Court's original jurisdiction to protest the award of a contract. *Id.*

*Id.* Here, there is no dispute that Petitioners are taxpayers in the Commonwealth. Because they have filed a complaint in equity with this Court, they have standing to bring this action and DGS' and Alexander's preliminary objection is denied.[11]

10. Petitioners do not dispute that DGS is a Commonwealth agency. *See Department of General Services v. Ogontz Area Neighbors Association,* 505 Pa. 614, 483 A.2d 448 (1984).

11. DGS and Alexander argue, however, that the Procurement Code did not change the law of standing as it applies to non-disappointed bidders as set forth in *William Penn Parking Garage v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975). In *William Penn,* taxpayers who were affected by a tax ordinance sought to challenge the ordinance and were held to have standing because they were aggrieved by the ordinance. As in this case, there was no question that those challenging the taxing ordinances were taxpayers and were able to bring their action for that reason.

## II.

## BID DOCUMENT

 Section 512(g) of the Commonwealth Procurement Code, 62 Pa.C.S. § 512(g), provides that public contracts shall be awarded to the lowest responsible and responsive bidder whose bid meets the requirements and criteria set forth in the invitation for bids. Paragraph A.5 of DGS' Instructions to Bidders contains the following information regarding the execution of the bid:

> The bidder **must sign the bid correctly.** If the bid is made by a corporation, the bid must be signed by the President or Vice President and any one of the following officers of the Corporation: the Secretary, Assistant Secretary, Treasurer, Assistant Treasurer. If not signed by the specified officers, the signing individual must be authorized to sign by the corporation's board of directors. If a person other than one of these officers executes the bid, a copy of the document authorizing that person to execute the bid must accompany the bid. (Emphasis added.)

Similarly, DGS' regulations require a signature on the bid documents. *See* 4 Pa. Code § 61.3(c).[12] The law is well settled that "instructions to bidders are a material part of the contract between the parties and compliance therewith is necessary to constitute a valid bid." *R. & B. Builders, Inc. v. Philadelphia School District,* 415 Pa. 50, 52, 202 A.2d 82, 83 (1964).

DGS and Alexander concede that the bid document does not contain Alexander's signature. However, they argue that the bid bond was signed by Alexander, and based on our Supreme Court's recent decision in *Gaeta v. Ridley School District,* 567 Pa. 500, 788 A.2d 363 (2002), they have met the standard necessary for acceptance by a governmental agency of a non-conforming bid.

In *Gaeta,* the issue was whether a school district was obligated to reject a low bid which included a bid bond that did not contain the required surety rating of "A-" or better but contained a "B" rating. In determining whether the noncompliance was fatal to accepting the bid, our Supreme Court stated that two factors had to be considered when determining whether a non-compliant bid for public work could be accepted or cured: first, whether the effect of a waiver would deprive the agency of its assurance that the contract would be entered into, performed and guaranteed according to its specified requirements, and second, whether it was of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary standard of competition. The Court also noted that where legislative pronouncements particularized the manner in which the government contract was to be made, those requirements were not subject to waiver. Ultimately, the Court concluded that the school district was not required to reject the low bid that did not contain the requisite surety rating because the school district had discretion to waive de-

---

12. 4 Pa.Code § 61.3(c) provides:

**The bidder shall sign his proposal correctly.** If the proposal is made by an individual, his complete post office address should be given in addition to his signature. If made by a firm or partnership, the complete post office address of each member of the firm or partnership must be given. If made by a corporation, the person signing the proposal shall be the President or Vice President and the Secretary or Treasurer of the corporation; otherwise, the signing individual's certificate of authority to execute such papers shall accompany the proposal. (Emphasis added.)

fects, upon request the contractor furnished a bond of the required quality, the surety rating was not material to the bid, and submission of the bid with the lower-rated surety did not give the contractor a competitive advantage over other bidders.

DGS and Alexander do not seem to realize that, unlike in *Gaeta*, where the defect was found to be non-material, the signature on the bid is *the* most essential and material element of the bid document because, without a signature, there is no bid, i.e., no offer that the Commonwealth can accept or enforce. When a bid is not signed and the apparent "low bidder," for whatever reason—has other work, misbid the contract, etc.—can refuse the award because the "bid" is not signed, the "bid" is not, in fact, a bid. Moreover, it makes no difference that the bid bond was signed because that is an obligation on the part of the surety that the bidder will honor the bid, but without the signature on the bid, there is no bid to honor.[13] Consequently, because the bid document was not signed, Petitioners' complaint was legally sufficient and DGS' and Alexander's preliminary objection is denied.[14]

### III.

### LACHES

■ Before addressing the merits of DGS' and Alexander's argument regarding laches, we need to address Petitioners' argument that because DGS and Alexander did not raise laches as an affirmative defense under new matter in their answer to Petitioners' complaint and only raised it in their preliminary objections, that issue is waived. Pa. R.C.P. No. 1509(b) provides in relevant part that, "the objections of laches ... may be raised by preliminary objection, answer or reply but are not waived if not pleaded." In *Cabell v. The City of Hazleton,* 96 Pa.Cmwlth. 129, 506 A.2d 1001 (1986), this Court held that Pa. R.C.P. No. 1509(b) applied solely to actions in equity,[15] and the defense of laches raised by preliminary objections in those instances was not waived. Because Petitioners filed a petition for review in the nature of a complaint in equity, DGS and Alexander properly raised the defense of laches in their preliminary objections.

■ As to DGS' and Alexander's argument that Petitioners' action is barred by laches,[16] they allege that as of March 25, 2002, Petitioners had possession of Alexander's bid documents and as of April 5, 2002, they had DGS' decision to proceed with the contract. Because they knew that construction would proceed on the project as of April 5, 2002, they could have filed for an injunction at that time. How-

13. For the same reason, although DGS may ratify a contract after its execution, even though it is in violation of the law, 62 Pa.C.S. § 1743(1), the contract was invalid when the bid document did not comply with the bidding instructions.

14. As for the MBE Sheet, although there is some question as to whether it was properly filled out when it was submitted with the bid document, if the information contained therein was incorrect, such a defect would not be material compared to the omission of a signature on the bid document.

15. We noted in *Cabell* that in actions in mandamus and *quo warranto,* which were actions at law and not in equity, laches had to be raised as an affirmative defense.

16. The doctrine of laches may be asserted as an affirmative defense to bar a claim when a complaining party is guilty of want of due diligence in failing to promptly institute an action to the prejudice of another. *Peden v. Gambone Brothers Development Company,* 798 A.2d 305 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 569 Pa. 726, 806 A.2d 864 (2002). The party asserting laches as a defense must present evidence demonstrating prejudice from the lapse of time. *Id.*

ever, they delayed by filing their claim 48 days later, thereby prejudicing DGS, Penn State, Alexander and all of the other contractors.

■ Petitioners, however, argue that they were not parties to Fiore's bid protest before DGS, did not receive copies of DGS' April 5, 2000 decision, and did not learn about DGS' failure to reject Alexander's bid until the end of April, 2002. Because they only waited a total of three weeks to file their petition for review, laches did not apply because that was not an unreasonable amount of time to file the instant action.[17] They further argue that even if we determine that they waited too long to file their petition, any delay was caused in whole or in part by DGS' conduct. More specifically, they contend that there was a history of correspondence between counsel for Petitioners and counsel for DGS, and during telephone conversations and voicemails left, counsel for DGS indicated that DGS was investigating the bid process, the result of which could have made the present litigation moot. Additionally, counsel

for Petitioners was informed that the Inspector General's office was conducting an investigation into the bid process and that the outcome of that investigation could make the instant litigation moot. Because it was DGS' conduct that caused the delay, it is disingenuous for DGS to contend that laches bars this action.[18]

Accordingly, DGS' and Alexander's preliminary objections are denied.

### ORDER

AND NOW, this *2nd* day of *January*, 2003, the preliminary objections filed by the Commonwealth Department of General Services and Alexander Constructors, Inc. are denied. Both parties have 30 days in which to file an answer to the petition for review.

---

17. They also assert the Fiore testified during the hearing before DGS that DGS had informed it that it would not receive additional work via change order from DGS on the project if it appealed the April 5, 2002 decision on its bid protest. Because DGS would have refused to give Fiore additional work by change order if it filed an appeal, Fiore was intimidated from filing an appeal under the Procurement Code.

18. In their briefs and at oral argument, DGS and Alexander argued that no relief was avail-

able to Petitioners under the Procurement Code, i.e., nullifying the contract, because 62 Pa.C.S. § 1743 required them to plead bad faith on the part of Alexander for failing to sign the bid which they did not do. Because DGS and Alexander could not and did not raise this argument in their preliminary objections, *see* Pa. R.C.P. No. 1028, we are precluded from addressing this issue.